**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re: | ) |
| SUBPOENA TO AOL, LLC | ) |
| | ) MISCELLANEOUS |
| | ) CASE NO. _____ |
| | ) |
| | ) (RE: CASE NO . 07-CV-01976-SCB-MAP |
| | ) *In the Middle District of Florida)* |
| | ) |

JOHN DOE'S MOTION TO QUASH

## MOTION TO QUASH SUBPOENA TO THIRD PARTY

Petitioner, a John Doe Defendant ("Doe") in to a libel suit now pending in the

United States District Court  for the Middle District of Florida, styled *Edward T. Saadi v.*

*Pierre A. Maroun, Hala Fakhre Maroun, Maroun International, LLC, and John Does 3-*

*12*, Case No. 07-CV-01976-SCB-MAP, respectfully moves this Court for an Order

quashing the subpoena to AOL, LLC ("AOL") seeking information concerning Doe's

identity.  A Memorandum in Support of this Motion is attached hereto and incorporated

herein.

Respectfully submitted,

_____
ERIC PELLETIER (Unified Bar No. 454794)
epelletier@offitkurman.com
OFFIT KURMAN
8171 Maple Lawn Boulevard, Suite 200
Maple Lawn, MD 20759
(301) 575-0339 / (301) 575-0335 *(facsimile)*
Attorneys for one of the John Doe
Defendants

## CERTIFICATE OF SERVICE

A copy of the foregoing John Doe's Motion to Quash and Memorandum in Support was served upon the following via regular U.S. Mail, postage prepaid this 27th day of June, 2008:

William J. Brown, Esq.
777 Brickell Avenue, Suite 114
Miami, FL 33131

Attorney for Plaintiff
Edward T. Saadi

Lee Segal, Esq.
Segal & Schuh Law Group P.L.
13575 58th Street North, Suite 140
Clearwater, FL 33760

Attorney for Defendants
Pierre A. Maroun, Hala Fakhre Maroun, and Maroun International, LLC

ERIC PELLETIER

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

In Re:                                    )
SUBPOENA TO AOL, LLC                      )
                                          )   MISCELLANEOUS
                                          )   CASE NO. _____
                                          )
                                          )   (RE: CASE NO . 07-CV-01976-SCB-MAP
                                          )   *In the Middle District of Florida)*
                                          )

JOHN DOE'S MOTION TO QUASH

## MEMORANDUM IN SUPPORT OF JOHN DOE DEFENDANTS'
## MOTTION TO QUASH SUBPOENA TO THIRD PARTY (AOL, LLC)

In support of its Motion to Quash, the John Doe Movant sets forth this
Memorandum.

I.    BACKGROUND

On November 1, 2007, Plaintiff Edward T. Saadi ("Saadi") filed suit in the United
States District Court for the Middle District of Florida, Case No.  07-CV-1976-SCB-
MAP,  naming as defendants Pierre A. Maroun, Hala Fakhre Maroun, Maroun
International, LLC, and John Does 3-12.  The suit claims that Saadi has been harmed by
defamatory statements allegedly posted by Defendants on an Internet "blog" and on two
different Internet "forums."

The Second Amended Complaint, filed on May 4, 2008, includes counts for
defamation, intentional infliction of emotional distress, and injunctive relief to prevent
further posting of the alleged defamatory statements and to require the removal of those

same statements from the Internet.  Saadi has alleged diversity jurisdiction under 28 U.S.C. § 1332 because he is a resident of Ohio and the Marouns reside in Florida, and has alleged damages in excess of $75,000.  (See Second Amended Complaint, attached hereto as Exhibit A.)

Saadi had been representing himself in the matter until June 20, 2008, when his attorney, William J. Brown, entered his appearance in the action.

Specifically, Saadi alleges that Defendants posted "false and defamatory statements about him on the Internet blog located at http://biggestloosers.blogspot.com, under the alias, "Losers."  Saadi further claims that Defendants "re-posted" those same statements on two different Internet forums located at www.lebforces.org and www.bachiregemayel.org, under the aliases "Bashir4Ever," "Bush," and "b2a3kafra." Saadi also claims that Defendants published additional "defamatory statements" at www.alcc-research.com/news_articles/Aoun-VS_Maroun.html.

Defendants Pierre A. Maroun and Hala Fakhre Maroun filed a Motion to Dismiss Second Amended Complaint or in the Alternative Motion for a More Definite Statement on May 20, 2008.  (See Motion to Dismiss, attached hereto as Exhibit B.)  The Marouns seeks dismissal of the Second Amended Complaint pursuant to Fed. Civ. R. 12(b)(6).  In particular, they seek dismissal of the libel claim based on First Amendment grounds and based on Florida common law regarding defamation.

On June 5, 2008, after the Marouns filed their Motion to Dismiss, Saadi, while still proceeding *pro se*, issued a subpoena to AOL, an Internet Service Provider ("ISP"), to learn the identities of the John Doe defendants.  (See AOL subpoena, attached hereto as Exhibit C.)  Saadi served the subpoena upon AOL without notice to the Florida Middle

2

District Court or to the Marouns.  Doe learned of the AOL subpoena upon receiving notification from AOL.

The subpoena should be quashed because requiring AOL to comply would be unreasonable.  The subpoena indicates that AOL is to produce documents to a Starbucks located in Washington, D.C. at 2:00 p.m.  It is not clear how Saadi expects AOL to comply with the subpoena.  For example, does Saadi expect AOL to hand the confidential identity documents identifying John Doe to the barista standing behind the counter or is AOL expected to announce that it has in its possession documents in response to a subpoena in the hopes that someone will claim them?

The AOL subpoena should also be quashed because forcing AOL to divulge the identities of the John Doe defendants would intimidate Internet users and chill constitutionally protected speech.  The First Amendment protects the right to speak anonymously.   This right extends to anonymous speech over the Internet. This is especially important as the blog sites are political in nature where First Amendment protections.

In addition, the AOL subpoena should be quashed because of the pending Motion to Dismiss, which raises purely legal challenges to the Second Amended Complaint. Because no discovery is necessary for the Florida Middle District Court to rule on the Motion to Dismiss, all discovery seeking to identify any of the John Does should be stayed pending a ruling on the Marouns' Fed. Civ. R. 12(b)(6) Motion.

Finally, the subpoena should be quashed because it appears to require AOL to produce documents at a distance greater than 100 miles from its location, in violation of Fed. Civ. R. 45. (See Exhibit C.)  According to the affidavit of process server, the

3

subpoena was served in Richmond, Virginia, a distance which is located more than 100 miles from Washington, D.C.[1]

## II.    LAW AND ARGUMENT

### A.    The AOL Subpoena Violates John Doe's Constitutional Rights.

The United States Supreme Court has held that the First Amendment protects anonymous speech. See, e.g. *Buckley v. American Constitutional Law Foundation,* 525 U.S. 182, 199-200 (1999); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341-43 (1995).

Anonymity on the Internet is given particular weight. The Supreme Court has recognized that the Internet is a special medium of communication, entitled to the greatest protection. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871 (1997). Because the Internet is accessible, and thereby empowers anyone with a computer and a modem to speak his mind and be heard, it has become the focus of legislation aimed at controlling the "outspoken masses." Such laws, however, have been struck down as unconstitutional impingements of the First Amendment. See e.g., *American Civil Liberties Union v. Johnson*, 4 F.Supp.2d 1029, 1033 (D.N.M. 1998), aff'd., 194 F.3d 1149 (10th Cir. 1999); *American Civil Liberties Union v. Miller*, 977 F.Supp. 1228, 1230-1232 (N.D. Ga. 1997).

Enforcement of the SBC subpoena would violate Doe's constitutional right to free speech and privacy. In *N.L.R.B v. Midland Daily News*, 151 F.3d 472 (6th Cir. 1998), the Sixth Circuit upheld the trial court's denial of a request to order a newspaper to comply with a subpoena seeking the production of documents identifying the source of an

---

[1] The Court may take judicial notice of the fact that the distance between Richmond, Virginia and Washington, D.C. is greater than 100 miles.

anonymous advertisement in the newspaper's classified pages. Plaintiff sought the information to support its "speculative" charges against the advertiser. The Sixth Circuit noted that if it permitted the plaintiff to obtain the identity of the advertiser without first demonstrating a reasonable basis for seeking such information, the chilling effect on newspapers and publishers would violate the Constitution. Id. at 475.

Other federal courts also recognize that discovery regarding the identity of an anonymous speaker should not be routinely granted. In *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), the plaintiff filed a lawsuit for trademark infringement and unfair competition against several Doe defendants. The key issue was whether discovery regarding the identity of the Doe defendants using Internet pseudonyms. The Court noted: "As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." Id. at 577 (citations omitted). Before the court would allow plaintiff to pursue discovery of the identity of the anonymous defendants, the court required the plaintiff to demonstrate that the claims against anonymous parties could withstand a motion to dismiss. Id. at 579.

In *Doe v. 2TheMart.com*, 140 F.Supp.2d 1088 (W.D. Wash. 2001), the Court applied a similar analysis in determining whether to order discovery against non-party Internet users. Applying *Columbia Insurance*, the court held that the standards for ordering discovery against anonymous non-parties must be stricter than if the discovery is sought from a party. Id. at 1095.

5

Another case worthy of note is *SPX Corp. v. John Doe*, 253 F.Supp. 2d 974 (N.D. Ohio 2003). The subpoena in that case sought documents that would have identified the John Doe defendant, an anonymous user of a Yahoo! screen name. In challenging the subpoena, the John Doe defendant maintained that the statement at issue did not meet the legal definition of defamation. He also argued that the First Amendment guaranteed his right to speak anonymously and that he wished to avoid discovery that might reveal his identity. The plaintiff, on the other hand, argued that it was entitled to discovery in order to be able to purse its action. The late Judge Manos issued a Memorandum of Opinion and Order reserving ruling on the Motion to Quash:

> The Court recognized the sensitive issues regarding the protection of anonymous speech, as well as those regarding forcing an Internet Service Provider (Yahoo!) to reveal personal information of a subscriber. The Court concluded that the various competing interests were best balanced by entertaining a motion to dismiss prior to permitting discovery which would reveal the Defendant's identity.

Id. at 977; see Memorandum of Opinion, attached hereto as Exhibit D. The court ordered that discovery be stayed until after it ruled on the motion to dismiss.

B.    The AOL Subpoena Fails to Comply with Fed. Civ. R. 45(b)(2) Because It Requires AOL to Travel More Than 100 Miles.

Under Fed. Civ. R. 45(b)(2), a witness cannot be required to appear and produce documents at a place more than 100 miles from its business. The limitation in Rule 45 draws no distinction between being compelled to testify and being compelled produce documents. *Miller v. Holzmann*, 471 F.Supp.2d 119 (D.C. Dist. 2007). The subpoena was served in Richmond, Virginia, a distance which is located more than 100 miles from Washington, D.C. Therefore, this Court is without jurisdiction to enforce it.

6

III.    CONCLUSION

Doe has a constitutionally protected right under the First Amendment to speak anonymously on the Internet. That right cannot be stripped away by the mere filing of a lawsuit, especially when it appears that the lawsuit lacks merit. For these reasons, Doe requests that this Court issue an order quashing the subpoena directed at SBC.

Respectfully submitted,

ERIC PELLETIER (Unified Bar No. 454794)
epelletier@offitkurman.com
OFFIT KURMAN
8171 Maple Lawn Boulevard, Suite 200
Maple Lawn, MD 20759
(301) 575-0339
(301) 575-0335 *(facsimile)*

Attorneys for one of the John Doe
Defendants

CERTIFICATE OF SERVICE

A copy of the foregoing John Doe's Motion to Quash and Memorandum in Support was served upon the following via regular U.S. Mail, postage prepaid this 27th day of June, 2008:

William J. Brown, Esq.
777 Brickell Avenue, Suite 114
Miami, FL  33131

Attorney for Plaintiff
Edward T. Saadi

Lee Segal, Esq.
Segal & Schuh Law Group P.L.
13575 58th Street North, Suite 140
Clearwater, FL 33760

Attorney for Defendants
Pierre A. Maroun, Hala Fakhre Maroun, and Maroun International, LLC

ERIC PELLETIER

8

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EDWARD T. SAADI, an Individual, | ) CASE NO.: 07-CV-01976-SCB-MAP |
| | ) |
| Plaintiff, | ) Judge Susan C. Bucklew |
| | ) Mag. Mark A. Pizzo |
| v. | ) |
| | ) |
| PIERRE A. MAROUN, aka "Losers," an | ) |
| individual, HALA FAKHRE MAROUN aka | ) **SECOND AMENDED COMPLAINT FOR** |
| HALA MAROUN aka HALA FAKHRE aka | ) **INJUNCTIVE RELIEF AND DAMAGES** |
| "Losers," an individual, JOHN DOE #3, aka | ) **AND DEMAND FOR JURY TRIAL** |
| "Bashir4Ever," an individual whose name is | ) |
| presently unknown, JOHN DOE #4, aka | ) |
| "Bush," an individual whose name is presently | ) |
| unknown, JOHN DOE #5, aka "b2a3kafra," an | ) |
| individual whose name is presently unknown, | ) |
| MAROUN'S INTERNATIONAL, LLC, a | ) |
| Florida limited liability company, and JOHN | ) |
| DOES #7-12, individuals, corporations, | ) |
| organizations, or other legal entities whose | ) |
| names are presently unknown, | ) |
| | ) |
| Defendants | ) |

**SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
AND DEMAND FOR JURY TRIAL**

Plaintiff EDWARD T. SAADI ("Saadi"), *pro-se*, hereby sues Defendants, PIERRE A.

MAROUN, HALA FAKHRE MAROUN, JOHN DOES #3-5, MAROUN'S

INTERNATIONAL, LLC, and JOHN DOES #7-12, in this action for injunctive relief and

damages and states:

**INTRODUCTION**

1.  This is an action for injunctive relief and damages arising out of (1) the posting of

false and defamatory statements on an internet "blog," on internet websites,and on

internet forums by or with the assistance or participation of Defendants and (2) the

**EXHIBIT**

A

SECOND AMENDED COMPLAINT

carrying out against the Plaintiff of a systematic two-year-long campaign of character assassination, intimidation, threats of physical and other harm, bullying, and menacing.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this is an action for money damages between citizens of different States, in which the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is properly laid in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the claims alleged by Saadi occurred in this district; specifically, defamatory statements regarding Saadi were posted to the internet in this district, and/or by using computers and servers located in this district. Venue is also properly laid in this District because one or more Defendants are subject to personal jurisdiction in this district and there is no other district in which the action may otherwise be brought.

4. Defendants are subject to personal jurisdiction in Florida and this district because they: (a) are residents of Florida and this district; (b) have their principal place of business in Florida and this district; (c) engaged in substantial and not isolated activities in Florida and this district; (d) committed tortious acts within Florida and this district; (e) caused injury to persons located in Florida and this district, while at the same time they engaged in solicitation and service activities within Florida and this district; and/or (f) engaged in unlawful conduct in this Florida and this district, specifically, by publishing false and defamatory statements about Saadi within

Florida and this district, and/or using computers and servers located in Florida and this district.

## PARTIES

5. Saadi is an individual and citizen of the United States and a resident and citizen of the State of Ohio.

6. Defendant PIERRE A. MAROUN is an individual and citizen of the United States and a resident and citizen of the State of Florida.

7. Defendant HALA FAKHRE MAROUN is an individual and is, on information and belief, a citizen of the United States and a resident of the State of Florida.

8. The true name of Defendant JOHN DOE #3, aka "Bashir4Eever," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Second Amended Complaint and insert Defendant JOHN DOE #3's true name in place of the fictitious name when the same has become known to Saadi.

9. The true name of Defendant JOHN DOE #4, aka "Bush," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Second Amended Complaint and insert Defendant JOHN DOE #4's true name in place of the fictitious name when the same has become known to Saadi.

10. The true name of Defendant JOHN DOE #5, aka "b2a3kafra," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #5's true name in place of the fictitious name when the same has become known to Saadi.

3    SECOND AMENDED COMPLAINT

11. Defendant MAROUN'S INTERNATIONAL, LLC is a Florida limited liability company with its principal place of business in St. Petersburg, Florida.

12. On information and belief, Defendant PIERRE A. MAROUN controls and dominates MAROUN'S INTERNATIONAL, LLC to the extent that MAROUN'S INTERNATIONAL, LLC is a mere instrumentality or alter ego of Defendant PIERRE A. MAROUN and manifests no separate and independent existence of its own. Defendant PIERRE A. MAROUN engaged in improper, fraudulent, and unjust conduct in the formation and use of MAROUN'S INTERNATIONAL, LLC. Defendant PIERRE A. MAROUN fraudulently used MAROUN'S INTERNATIONAL, LLC as a means of evading liability with respect to the transactions and occurrences and conduct described herein, which were, in truth, personal and not corporate. Said improper and conduct caused injury to the Plaintiff.

13. The true names of Defendants JOHN DOES #7-12 are unknown to Saadi, who therefore sues said Defendants under such fictitious names.

14. Saadi is informed and believes, and on such information and belief alleges, that each of Defendants JOHN DOES #3-5 and JOHN DOES #7-12 published false and defamatory statements concerning Saadi on an internet "blog," on internet forums, and/or other internet websites or assisted or participated in the doing of same by other Defendants. Saadi will seek leave of court to amend this Second Amended Complaint and insert their true names in place of their fictitious names when the same have become known to Saadi.

**COMMON ALLEGATIONS**

15. Saadi is a 1993 graduate of Georgetown University and a 1996 graduate of the Georgetown University School of Law. Saadi is an attorney licensed to practice law in state and/or federal courts in Ohio, California, Michigan, and the District of Columbia. Saadi is the sole member of a successful law firm in Boardman, Ohio.

16. The Internet is the world's largest network of computer networks. It is a decentralized, global medium of communications that links people and businesses around the world, allowing instantaneous sharing of information. In recent years, the commercial aspects of the Internet have mushroomed, with millions upon millions of individuals and commercial enterprises engaging in daily transactions and making financial and business decisions based upon information found on the Internet. Currently, tens of millions of computers in the United States alone are linked directly to the Internet, and more than 100 million users connect to the Internet worldwide. Countless users spend hours browsing the Internet each day, scouring different sites for information relevant to their business, financial and personal decisions.

17. The World Wide Web (the "Web") is the most popular way to provide and retrieve information on the Internet. Anyone with access to the Internet and proper software can post content on the Web, which may contain many different types of digital information—text, images, sound, and even video. The Web is comprised of millions of separate but interconnected "Web sites" which in turn may have hundreds of separate "Web pages" that display content provided by particular persons or organizations.

SECOND AMENDED COMPLAINT

18. Google, Inc. ("Google") is a global Internet media company, whose "Google" Web Site (http://www.google.com) is one of the most popular destinations on the Web.

19. Among Google's most popular offerings is its Web site known as "BlogSpot" (http://www.blogspot.com), in which users can design, build, and publish an on-line publicly accessible diary known as a "blog." Such blogs can be viewed and read by anyone with access to the Web. Each day, countless users around the world read these blogs.

20. One blog available on Google's "BlogSpot" Web site is, or was, located at http://biggestloosers.blogspot.com (hereinafter the "Blog").

21. Other Web sites contain "forums" in which users can engage in interactive written public discussions, sometimes anonymously or pseudonymously. Such forums can be viewed and read by anyone with access to the Web. Each day countless users around the world read and post contributions to these forums. Two Web sites which contain such forums are located at www.lebforces.org and www.bachirgemayel.org (hereinafter the "Forums").

22. Defendants PIERRE A. MAROUN,  HALA FAKHRE MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 have posted false and defamatory statements regarding Saadi on the Blog using the alias "Losers." Examples of these postings are attached hereto as Exhibits "A," "B," and "C."

23. Defendants PIERRE A. MAROUN,  HALA FAKHRE MAROUN, JOHN DOES #3-5, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 have re-posted said false and defamatory statements regarding Saadi to the Forums using the aliases

SECOND AMENDED COMPLAINT

"Bashir4Ever," "Bush," and/or "b2a3kafra." Examples of these re-postings are attached hereto as Exhibits "D" and "E."

24. Since their posting, said false and defamatory statements regarding Saadi have remained available to millions of Internet users, many of whom may have made copies of the false and defamatory statements and/or redistributed them by electronic mail or other means and/or re-posted them on other Web sites, forums, and blogs, and Saadi has no means of removing these false and defamatory statements from the Internet.

25. On February 1, 2008, Saadi served PIERRE A. MAROUN and HALA FAKHRE MAROUN with a written notice pursuant to Fla. Stat. Ann. §770.01 of the false and defamatory material shown in Exhibits "A," "B," and "C" and demanded that said Defendants remove, and publish a retraction of, said statements, but said Defendants failed and refused to remove or retract any of the defamatory material within the period set forth in the written notice. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "F."

26. After having been named and served in this action, and in retribution therefor, Defendants PIERRE A. MAROUN, MAROUN'S INTERNATIONAL, LLC, and JOHN DOES #7-12 published more false and defamatory statements to a webpage at http://www.alcc-research.com/news_articles/Aoun_VS_Maroun.html. True and correct copies of said webpage are attached hereto as Exhibit "G." Said defamatory statements consist of, but are not limited to, statements which cast Saadi—and the present lawsuit—are somehow associated with terrorism. Said Defendants also refer to Saadi as "disgraceful," "treacherous," "unethical," and "criminal." Said webpage

SECOND AMENDED COMPLAINT

make direct reference to Saadi, and also includes, in the midst of said defamatory statements, "hyperlinks" which, when "clicked," point to the Amended Complaint and to other documents filed in this case. Specifically, the "hyperlink" shown on Exhibit "G" bearing the text "The Cry Baby's 'I suffered severe emotional distress and emotional injury's' [sic] LAWSUIT_PDF_waaa33" points directly to the Amended Complaint in this case. A true and correct copy of the contents of that hyperlink is shown in Exhibit "H." The "hyperlink" shown on Exhibit "G" bearing the text "They say: An Attorney Who Represents Himself Has a Fool for a Client Here's the reply of the attorney/client to our motion to dismiss the frivolous lawsuit. NO COMMENT! Seriously!" points directly to the Opposition to Defendants' Motion to Dismiss Amended Complaint in this case.

27. On March 20, 2008, Saadi served Jill A. Schuh, Esq., counsel for PIERRE A. MAROUN with a written notice pursuant to Fla. Stat. Ann 770.01 of the false and defamatory material shown in Exhibit "G" and demanded that said Defendant remove, and publish a retraction of, said statements, but said Defendant failed and refused to remove or retract any of the defamatory material as demanded in the written notice. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "I."

28. All conditions precedent to the maintenance of this action have been performed, discharged, waived, or otherwise satisfied.

8

## COUNT I – DEFAMATION (LIBEL)

29. Paragraphs 1-28 are hereby re-alleged and incorporated herein by reference.

30. Defendants published, and re-published, false and defamatory statements about Saadi, including those contained in the postings to the Blog and the Forums as shown in Exhibits "A," "B," "C," "D," "E," and "G."

31. The false and defamatory statements published by Defendants regarding Saadi, as reasonably understood, impugn the integrity and competence of Saadi, discredit Saadi's business methods, undermine the confidence of the public and Saadi's clients in Saadi's business, and/or drive away the public and Saadi's clients from using Saadi's services.

32. The false and defamatory statements published by the Defendants, when considered alone, without innuendo, tend to subject Saadi to hatred, distrust, ridicule, contempt, or disgrace, tend to injure Saadi in his trade or profession, and/or attribute to Saadi conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office.

33. The false and defamatory statements published by the Defendants accuse Saadi of having committed, or having participated in the commission of, serious crimes.

34. Defendants owed and owe a duty to Saadi to not publish false and defamatory statements about Saadi. In publishing the false and defamatory statements about Saadi, Defendants breached that duty.

35. In publishing the false and defamatory statements about Saadi, Defendants knew, or in the exercise of reasonable care should have known, that the statements were false.

SECOND AMENDED COMPLAINT

36. In publishing the false and defamatory statements about Saadi, Defendants acted with malice, actual malice, with knowledge that the statements were false, and/or with reckless disregard for their truth or falsity.

37. As a result of the foregoing publications of false and defamatory statements by Defendants, Saadi has been damaged, including, but not limited to, damage to his reputation, and loss of business, and other damage.

38. In carrying out the foregoing conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions and the rights of Saadi.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

## COUNT II -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39. Paragraphs 1-38 are hereby re-alleged and incorporated herein by reference.

40. Defendant PIERRE A. MAROUN has, over a period of approximately two years, made multiple threats of assault, and threats of other types of harm, against Saadi and his family, including Saadi's elderly father.

41. Defendant PIERRE A. MAROUN has, over a period of more than two years, engaged in a systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family.

42. Defendant PIERRE A. MAROUN has, over a period of approximately two years, engaged in a systematic campaign of character assassination against Saadi.

SECOND AMENDED COMPLAINT

43. Defendant PIERRE A. MAROUN, by and through his threats of physical and other harm to Saadi and his family, and by and through his systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family, and by and through his making and publishing of the false, defamatory, and libelous statements about Saadi described herein, and by and through his systematic campaign of character assassination against Saadi, behaved intentionally and recklessly.

44. Defendant PIERRE A. MAROUN, by and through his threats of physical and other harm to Saadi and his family, and by and through his systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family, and by and through his making and publishing of the false, defamatory, and libelous statements about Saadi described herein, and by and through his systematic campaign of character assassination against Saadi, intended to cause emotional distress upon Saadi.

45. Defendant PIERRE A. MAROUN's threats of physical and other harm to Saadi and his family, and his systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family, and his making and publishing of the false, defamatory, and libelous statements about Saadi described herein, and his systematic campaign of character assassination against Saadi, are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

46. Saadi suffered severe emotional distress and emotional injury.

47. The actions of Defendant PIERRE A. MAROUN, as aforesaid, were the direct and proximate cause of such severe emotional distress and emotional injury to Saadi.

48. Saadi suffered and continues to suffer mental anguish as a result of being defamed and libeled by the Defendant PIERRE A. MAROUN, and as a result of Defendant PIERRE A. MAROUN's systematic campaign of character assassination against Saadi, and as a result of Defendant PIERRE A. MAROUN's threats of physical and other harm to Saadi and his family, and as a result of Defendant PIERRE A. MAROUN's systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family, and said mental anguish is of a nature that no reasonable person could be expected to endure.

49. All Defendants, by and through their making and publishing of the false, defamatory, and libelous statements described herein, behaved intentionally and recklessly.

50. All Defendants, by and through the making and publishing of the false, defamatory, and libelous statements, intended to cause emotional distress upon Saadi.

51. All Defendants' making of such false, defamatory, and libelous statements was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

52. Saadi suffered severe emotional distress and emotional injury. The Defendants' actions, as aforesaid, were the direct and proximate cause of such severe emotional distress and emotional injury to Saadi.

53. Saadi suffered and continues to suffer mental anguish as a result of being defamed and libeled by the Defendants, and said mental anguish is of a nature that no reasonable person could be expected to endure.

SECOND AMENDED COMPLAINT

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

## COUNT III – PRELIMINARY AND PERMANENT INJUNCTION

54. Paragraphs 1-53 are hereby re-alleged and incorporated herein by reference.

55. The improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Saadi will continue to be damaged by same.

56. In the absence of the entry of a preliminary and permanent injunction by the Court, Saadi will suffer serious and irreparable harm and injury, including but not limited to damage to his reputation, and loss of business.

57. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because they are required as a matter of law to refrain from disseminating defamatory statements regarding Saadi, and to refrain from engaging in the outrageous, intentional, indecent, atrocious, and reckless behaviors described herein.

58. Public policy favors the entry of a preliminary and permanent injunction because, *inter alia*, such relief will prevent unlawful conduct, will preserve and protect Saadi's reputation, and will promote business, thereby encouraging economic prosperity.

59. The aforesaid publications of false and defamatory statements by the Defendants has interfered with and is interfering with Saadi's present and prospective business relationships.

WHEREFORE, Saadi demands the entry of a preliminary and permanent injunction preventing the Defendants from (1) disseminating (via the internet or any other means) any false

SECOND AMENDED COMPLAINT

and defamatory statement regarding Saadi, (2) requiring Defendants to take all steps available and necessary to remove the false and defamatory statements published by Defendants from the internet, and (3) requiring the Defendants to refrain from further engaging in the outrageous, intentional, indecent, atrocious, and reckless conduct described herein.

Dated this 4th day of May, 2008        s/ Edward T. Saadi            .
                                          EDWARD TUFIC SAADI
                                          *Pro-Se* Plaintiff
                                          970 Windham Court, Ste 7
                                          Boardman, Ohio 44512
                                          (330) 782-1954
                                          (330) 266-7489 (fax)
                                          EdwardSaadi@aol.com

## JURY DEMAND

     Plaintiff Edward T. Saadi hereby requests a trial by jury.

Dated this 4th day of May, 2008        s/ Edward T. Saadi            .
                                            EDWARD TUFIC SAADI
                                          *Pro-Se* Plaintiff
                                          970 Windham Court, Ste 7
                                          Boardman, Ohio 44512
                                          (330) 782-1954
                                          (330) 266-7489 (fax)
                                          EdwardSaadi@aol.com

SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on May 4th, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: __NONE_____.

                                    s/ Edward T. Saadi_____,
                                    EDWARD T. SAADI
                                    *Pro-Se* Plaintiff
                                    970 Windham Court, Suite #7
                                    Boardman, Ohio  44512
                                    (330) 782-1954
                                    (330) 266-7489 (fax)
                                    EdwardSaadi@aol.com

15                          SECOND AMENDED COMPLAINT

While in his visit to Qatata, Aoun got drunk and showed his real face--------chucky.

The Aounists believe that Aoun belong in Baabda Palace, the rest of the world believe that he belong in Deir el-Salib (Rehab center for the mentally ill) where he was admitted once for treatement.

Visit This Nice Blog

POSTED BY LOSERS AT 9:51 PM   LINKS TO THIS POST

FRIDAY, MARCH 10, 2006

## Tayyar.org & FPM Forum Teams

Update:

the Aounist geeks "lobby" in the US.

Tony Haddad. He ran away from Lebanon in 1975 when the war started only to come back with Aoun in 2005 as a liberator. He owns a gas station in DC area. his activities in lobbying is based on his friendship with the chief of staff of E. Engel. What does a gas station boy know about politics and lobbying??? hmm, not much, hahaha

Gabby Issa: just a translator from Detroit. very disturbed individual.

Edward Saadi, a nerd/geek/stalker form Ohio. He claims to have a law degree but he never worked or tried a case. Too geeky to stand before a judge. he is mentally unstable and has a complex. He hates anyone who is successful or good looking because he lacks both.

hahah, and the losers call this a lobby.

http://www.lfpm.org/forum/

Jad Asswad; he is the Adminstrator of tayyar forum lfpm. He goes by the screen name X . He is related to Elie Asswad ex-LF leader (HK). Jad is known to be an emotional and a disturbed individual. As a geek, he spends his time behind his computer screen hunting Aoun's rivals. The man is his idol.

**The Paris Tayyar.org Website Team:**

**Site Coordinator:**                    EXHIBIT "A"

POSTED BY LOSERS AT 8:05 PM

## Where is our money?

It is a common knowledge that Aoun took, not to say stole, money from Lebanon when he ran away to France in 1990. Aoun himself admitted to this fact when he complained that the customs at Rafiq HAriri International Airport stopped his wife and that of Jssam Abu Jamra, and tried to prevent them from taking Samsonites filled with money, the Christian's money which they donated to fight the war on Syria. However, many still wonder, where is that money and who is benefiting from them? Well, after some thorough investigations, it became clear that more than one person is investing this money in coordination with Aoun. For example:

1) Nabil Sahlani: He is related to Aoun and he used to work on a gas station in Cleveland, Ohio. Today, he owns a construction company in North Carolina funded by the money Aoun stole from Lebanon. Sahlani shares his profit with Aoun and to fund the FPM activities, especially in registering students in universities who in turn vote for the FPM.

2) Tony Haddad: He also used to work on a gas station in Detroit, Michigan. Today, however, he owns a gas station in Maryland. He also shares the profit with Aoun and the FPM.

3) Gabby Issa: this guy suddenly became a business man. He's got money yet it is not clear where it suddenly came from. However, knowing that he is in cahoots with Haddad, it was evident that his money is also from Aoun. Issa is Aoun's messenger and contact with the Syrian Ba'ath regime.

4) Edward T. Saadi: Although he still has no job and living off his retired father's salary, he did not get any money for investment. But they bought him a new car.

It is important to note that none of these guys ever lived the war in Lebanon. They ran away like cowards when the first bullet was fired leaving their people to be slaughtered. However, they tried to present themselves as Lebanon's liberators today until Aoun allied himself with Hizbullah, a terrorist organization, and became one of Syria's puppets in Lebanon.

# EXHIBIT "B"

We support Aoun's call for reform and for opening all files, starting with his theft of our money.

POSTED BY LOSERS AT 10:39 AM

http://biggestloosers.blogspot.com/2006_02_01_biggestloosers_archive.html

**Edward T. Saadi**
14 Feb 2006  by Loosers
Although Eddy now live in his own appartment on the south side of Youngstown, his dad still pays his rent and his mom still bring his food. But hey, at least he has his own place where he can entertain his highschool girlfriend. ...
By the way, she already turned 18, so it's legal now though he is 15 years older.

LOOSERS - http://biggestloosers.blogspot.com

EXHIBIT "C"

Aoun and the Lebanese people's money - BG Forum

# THE DAILY STAR
Copyright (c) 2007 The Daily Star



09/08/07 #2

**Bashir4Ever**
Senior Member
**Full Member**



Join Date: Nov 2005
Posts: 414

Now could that possibly be the **money** that Aoun *(aka: Ge ne ral, I represent 70% of the Christians, Syria is our sister, I am the only one good enough to be president, Hizbullah is not a terrorist group, I am the only "clean" politician etc....)* stole from the Lebanese people when he ran away to France in his PJ's???

Tsk tsk... bad deeds have a way of coming back to haunt you!
_____
بيار الجميل اسمه لا يموت في لبنان. هذا اسم طبع تاريخ لبنان.

EXHIBIT "D"

10/08/07

**Bashir4Ever**
Senior Member
**Full Member**



Join Date: Nov 2005
Posts: 414

Tuesday, February 14, 2006

## Where is our money?

It is a common knowledge that Aoun took, not to say stole, **money** from Lebanon when he ran away to France in 1990. Aoun himself admitted to this fact when he complained that the customs at Rafiq HAriri International Airport stopped his wife and that of Issam Abu Jamra, and tried to prevent them from taking Samsonites filled with **money**, the Christian's **money** which they donated to fight the war on Syria. However, many still wonder, where is that **money** and who is benefiting from them? Well, after some thorough investigations, it became clear that more than one person is investing this **money** in coordination with Aoun. For example:

1) Nabil Sahlani: He is related to Aoun and he used to work on a gas station in Cleveland, Ohio. Today, he owns a construction company in North Carolina funded by the **money** Aoun stole from Lebanon. Sahlani shares his profit with Aoun and to fund the FPM activities, especially in registering students in universities who in turn vote for the FPM.

2) Tony Haddad: He also used to work on a gas station in Detroit, Michigan. Today, however, he owns a gas station in Maryland. He also shares the profit with Aoun and the FPM.

3) Gabby Issa: this guy suddenly became a business man. He's got **money** yet it is not clear where it suddenly came from. However, knowing that he is in cahoots with Haddad, it was evident that his **money** is also from Aoun. Issa is Aoun's messenger and contact with the Syrian Ba'ath regime.

4) Edward T. Saadi: Although he still has no job and living off his retired father's salary, he did not get any **money** for investment. But they bought him a new car.

It is important to note that none of these guys ever lived the war in Lebanon. They ran away like cowards when the first bullet was fired leaving their people to be slaughtered. However, they tried to present themselves as Lebanon's liberators today until Aoun allied himself with Hizbullah, a terrorist organization, and became one of Syria's puppets in Lebanon.

Aoun and the Lebanese people's money - BG Forum

Page 3 of 3



We support Aoun's call for reform and for opening all files, starting with his theft of our **money**.

posted by Losers at 10:39 AM
http://biggestloosers.blogspot.com/2006/02/where-is-our-money_14.html

بيار الجميل اسم لا يموت في لبنان. هذا اسم طبع تاريخ لبنان.

« Previous Thread | Next Thread »

**Currently Active Users Viewing This Thread: 1** (0 members and 1 guests)

**Posting Rules**

You **may not** post new threads
You **may not** post replies
You **may not** post attachments
You **may not** edit your posts

vB code is **On**
Smilies are **On**
[IMG] code is **On**
HTML code is **On**

Forum Jump
The Main Political Forum    Go

All times are GMT +3. The time now is 07:06 AM.

**Contact Us - Bachir Gemayel Community Site - Archive - Top**

Powered by vBulletin® Version 3.6.8
Copyright ©2000 - 2007, Jelsoft Enterprises Ltd.
Copyright(c) 01-05 Bachir Gemayel Foundation, all rights reserved.
All logos and trademarks in this site are property of their respective owner. The comments are property of their posters, all the rest © 01-07 by Bachir Gemayel Foundation.

**Treasury, in consultation with the Secretary of State, the authority to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA as may be necessary to carry out the purposes of my order."**



(#37)

### Batrak88
Bdedoune

08-08-2007, 03:07 PM

A general cannot be democratic. The life of military and democracy are two words that cannot meet.

And why are you surprised? This is the man who baned MPs from East Beirut after Taef, closed newspapers who refered to Elias Herawi as 'President', destroyed Bkerke and Sawt Lebnen el Horr, etc..

What changed? Now he is getting lessons on democracy from the strongest theocratic organization in the middle east, Hezbollah.



Offline

Posts: 2,407

Join Date: Jan 2006

اطلقه ص اح بط ص. خه :،

# EXHIBIT "E"

(#38)

### Bush
President

08-13-2007, 06:32 AM

Quote:

Where is our money?

It is a common knowledge that Aoun took, not to say stole, money from Lebanon when he ran away to France in 1990. Aoun himself admitted to this fact when he complained that the customs at Rafiq HAriri International Airport stopped his wife and that of Issam Abu Jamra, and tried to prevent them from taking Samsonites filled with money, the Christian's money which they donated to fight the war on Syria. However, many still wonder,



Online

Posts: 912

Join Date: Dec 2006

where is that money and who is benefiting from them? Well, after some thorough investigations, it became clear that more than one person is investing this money in coordination with Aoun. For example:

1) Nabil Sahlani: He is related to Aoun and he used to work on a gas station in Cleveland, Ohio. Today, he owns a construction company in North Carolina funded by the money Aoun stole from Lebanon. Sahlani shares his profit with Aoun and to fund the FPM activities, especially in registering students in universities who in turn vote for the FPM.

2) Tony Haddad: He also used to work on a gas station in Detroit, Michigan. Today, however, he owns a gas station in Maryland. He also shares the profit with Aoun and the FPM.

3) Gabby Issa: this guy suddenly became a business man. He's got money yet it is not clear where it suddenly came from. However, knowing that he is in cahoots with Haddad, it was evident that his money is also from Aoun. Issa is Aoun's messenger and contact with the Syrian Ba'ath regime.

4) Edward T. Saadi: Although he still has no job and living off his retired father's salary, he did not get any money for investment. But they bought him a new car.

It is important to note that none of these guys ever lived the war in Lebanon. They ran away like cowards when the first bullet was fired leaving their people to be slaughtered. However, they tried to present themselves as Lebanon's liberators today until Aoun allied himself with Hizbullah, a terrorist organization, and became one of Syria's puppets in Lebanon.

We support Aoun's call for reform and for opening all files, starting with his theft of our money.

Post by Losers on this blog:
. http://biggestloosers.blogspot.com/2...-money_14.html

Cleared by b2a3kafra.



(#39)

## Othello
Resource Team



Offline

Posts: 553

08-19-2007, 04:29 PM

This was sent to me by a dear friend...maybe a little long to read but VERY interesting.
------------------------------
Il est des événements inspirateurs qui déclenchent en moi un besoin intense d'exprimer mes pensées et réflexions débordantes. Je ne peux rester muet ou indifférent face à l'irrationalité des

LAW OFFICE OF

# EDWARD T. SAADI, LLC

ADMITTED TO PRACTICE IN
OHIO, CALIFORNIA, & WASHINGTON, D.C.

970 WINDHAM COURT, SUITE 7
BOARDMAN, OHIO 44512

(330) 782-1954
FAX (330) 266-7489

February 1, 2008

**RE: Notice Pursuant to Fla. Stat. Ann. §770.01 and Demand for Retraction**

Mr. Pierre A. Maroun
Dr. Hala Fakhre Maroun
11850 Dr. Martin Luther King Jr. St. N
Apt. #1207
St. Petersburg, FL 33716

Dear Mr. & Mrs. Maroun,

This notice is being served upon you pursuant to Fla. Stat. Ann. §770.01.

Please be advised that the following statements which you have published to the Internet blog located at biggestloosers.blogspot.com are false and defamatory:

(FROM BIGGESTLOOSERS.BLOGSPOT.COM/2006_02_01_ARCHIVE.HTML)
"IT IS A COMMON KNOWLEDGE THAT AOUN TOOK, NOT TO SAY STOLE, MONEY FROM LEBANON WHEN HE RAN AWAY TO FRANCE IN 1990. AOUN HIMSELF ADMITTED TO THIS FACT WHEN HE COMPLAINED THAT THE CUSTOMS AT RAFIQ HARIRI INTERNATIONAL AIRPORT STOPPED HIS WIFE AND THAT OF ISSAM ABU JAMRA, AND TRIED TO PREVENT THEM FROM TAKING SAMSONITES FILLED WITH MONEY, THE CHRISTIAN'S MONEY WHICH THEY DONATED TO FIGHT THE WAR ON SYRIA. HOWEVER, MANY STILL WONDER, WHERE IS THAT MONEY AND WHO IS BENEFITING FROM THEM? WELL, AFTER SOME THOROUGH INVESTIGATIONS, IT BECAME CLEAR THAT MORE THAN ONE PERSON IS INVESTING THIS MONEY IN COORDINATION WITH AOUN. FOR EXAMPLE:
[...]
4) EDWARD T. SAADI: ALTHOUGH HE STILL HAS NO JOB AND LIVING OFF HIS RETIRED FATHER'S SALARY, HE DID NOT GET ANY MONEY FOR INVESTMENT. BUT THEY BOUGHT HIM A NEW CAR.
[...]
WE SUPPORT AOUN'S CALL FOR REFORM AND FOR OPENING ALL FILES, STARTING WITH HIS THEFT OF OUR MONEY."

(FROM BIGGESTLOOSERS.BLOGSPOT.COM/2006_03_01_ARCHIVE.HTML)
"THE AOUNIST GEEKS 'LOBBY' IN THE US.
[...]
EDWARD SAADI, A NERD/GEEK/STALKER FORM OHIO. HE CLAIMS TO HAVE A LAW DEGREE BUT HE NEVER WORKED OR TRIED A CASE. TOO GEEKY TO STAND BEFORE A JUDGE. HE IS MENTALLY UNSTABLE AND HAS A COMPLEX. HE HATES ANYONE WHO IS SUCCESSFUL OR GOOD LOOKING BECAUSE HE LACKS BOTH.

HAHAH, AND THE LOSERS CALL THIS A LOBBY."

EXHIBIT "F"

LAW OFFICE OF
# EDWARD T. SAADI, LLC

Demand is hereby made that you immediately and completely remove said statements from the Internet, and that you publish an immediate full and fair retraction in as conspicuous a place and type as the original.

Should you comply with this demand, pursuant to Fla. Stat. Ann. §770.02 a plaintiff in a subsequent civil action against you may be limited to a recovery of actual damages. Conversely, should you fail to comply with this demand, such a plaintiff will not be so limited, and may be entitled to all damages available in law, including, but not limited to, both actual and punitive damages.

Signed this 1st day of February, 2008

Edward T. Saadi, Esq.

- 2 -

The American Lebanese Coordination Council

Page 1 of 2



**Aoun/Hezbollah war of terror against March 14ers reaches The US Federal Court!**

When General Michael Aoun was shouting fancy slogans from his comfortable home in Paris, many Lebanese viewed him as the Godfather of resistance, the man of principles, and the ultimate defender of Freedom and Democracy. Therefore, some cherished him, others idolized him, and few criticized him for they saw his real color. Thus, when this few exposed his dirty dealings with Syria and Hezbollah, similar to Paul Shaoul, Fares Khashan, Bassam Abu Eid, et. al. Aoun turned his fangs and claws on us. Therefore, when the threats of the Syrio/Lebanese security apparatus/terrorists on his behalf to silence us failed, Aoun unleashed his disgraceful and treacherous followers in the US to teach us a lesson.

Accordingly, the all mighty Aoun machine in the US waisted no time. After all, they, too, were hungry to punish those who dared to expose Aoun's treacherous politics as well as his mental condition. The end result of their hard work was filling a frivolous lawsuit against us in the US Federal Court. BRAVO Mr. Aoun. This was the only imprudent act that you could have done to prove us right; you did it.

While we await the trial's results, we assure Aoun and his followers/mobsters that we will not stop expressing our views and we will not stop practicing our sacred rights of freedom of expression, as well as our right to know the truth about our "elected"/appointed officials, some of which are mere lackeys to the Siryo/Iranian regimes. Moreover, we will not hesitate to hold them accountable for their unethical as well as criminal misdeeds. Therefore, we assure you that we will continue exposing Aoun, his mob, and all others' treacherous and criminal activities.

As for those who sold their souls, their honor and their countries for "thirty pieces of silver," we assure them that they will receive the same fate traitors have received throughout history- the noose.

The Cry Baby's "I suffered severe emotional distress and emotional injury's" LAWSUIT PDF waaa33

The article that triggered it all and discussions to sue the writer PDF

EXHIBIT "G"

The American Lebanese Coordination Council

We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are Life, Liberty and the pursuit of Happiness.—That to secure these rights, Governments are instituted among Men, Deriving their just powers from the consent of the governed.

© Maroun's International, LLC In Agreement with ALCC
All Rights Reserved



The American Lebanese Coordination Council                                        Page 1 of 2



The American Lebanese Coordination Council



We hold these truths to be self-evident, That all men are created equal, That they are endowed by their Creator with certain unalienable Rights, That among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, Deriving their just powers from the consent of the governed.

© Maroun's International, LLC in Agreement with ALCC
All Rights Reserved

The American Lebanese Coordination Council



ABOUT US   PERSPECTIVE   ACTIVITIES   WISDOM                    ARCHIVE   LINKS   TRIBUTES   CONTACT US

Pierre A. Maroun
Secretary General
ALCC
Senior Policy Advisor
ALC

**FEATURED EDITORIALS**

- Aoun Backs Hezbollah Worldwide
- Terrorist Map in Lebanon, Syria...
- History Will Repeat Itself in Lb...
- Is the Press Worthy of our Time?
- The Lebanese Crisis & Imp's...
- Time for Hizbollah to be Un...
- Politics of a Madman
- The Cedar Revolution
- WSN: Pierre A. Maroun...
- Protecting our Identity...

Maxwell Institute Lecture

**READERS COMMENTS**

- Those who cannot run with the big bears should stay out of politics. Damn kids!
- What's more important, your country or a position in a traitor and a madman's regime? tsk tsk tsk.
- Aoun and his followers are sheer dictators. They are abusing the legal system to quiet their political opponents. It seems that Mr. Saadi forgot that he lives in the USA not in Iran or Syria.
- Most unsuccessful people blame their career failure on others, unfortunately, this guy chose you.

Stop Funding Terrorism

ALC Commemorates the Cedar Revolution...

**Aoun/Hezbollah war of terror against March 14ers reaches The US Federal Court!**

When General Michael Aoun was shouting fancy slogans from his comfortable home in Paris, many Lebanese viewed him as the Godfather of resistance, the man of principles, and the ultimate defender of Freedom and Democracy. Therefore, some cherished him, others hated him, and few criticized him for they saw his true color. Thus, when we, the few rationals who did not care for loving and hating him exposed his dirty dealings with Syria and Hezbollah, and similar to Paul Shaoul, Fares Khashan, Bassam Abu Eid, et. al. Aoun turned his fangs and claws on us. Thus, and when the threats of the Syria/Lebanese security apparatus/terrorists on his behalf to silence us failed, Aoun unleashed his disgraceful and treacherous followers in the US to teach us a lesson by abusing the legal system.

Accordingly, the all mighty Aoun machine in the US waisted no time. After all, they, too, were hungry to punish those who dared to expose Aoun's treacherous politics as well as his mental condition. The end result of their hard work was filing a frivolous lawsuit against us in the US Federal Court. BRAVO Mr. Aoun. This was the only imprudent act that you could have done to prove us right; you did it.

While we await the trial's results, we assure Aoun and his followers/mobsters that we will not stop expressing our views and we will not stop practicing our sacred right to freedom of expression, as well as our right to know the truth about our "elected" appointed officials, some of whom are mere lackeys to the terrorist group Hezbollah and the Siryo/Iranian regimes. Moreover, we will not hesitate to hold them accountable for their unethical, as well as their criminal misdeeds. Therefore, we assure you that we will continue exposing Aoun, his mob, and all others' treacherous and criminal activities.

As for those who sold their souls, their honor and their countries for "thirty pieces of silver," we promise them that they will receive the same fate traitors have received throughout history-INFAMY and the NOOSE!

**Simple Thoughts:**
*The difference between genius and stupidity is that genius has limits.*

- The Cry Baby's "[i] suffered severe emotional distress and emotional injury's" LAWSUIT PDF
- The article that triggered it all and discussions to sue the writer PDF
- They say: An Attorney Who Represents Himself Has a Fool for a Client. Here's the reply of the attorney/client to our motion to dismiss the frivolous lawsuit. NO COMMENT!Seriously!

Joseph Hage
President
ALCC
President
ALC

**FREEDOM'S CORNER**

WE REMEMBER

FEB 14-MAR 14
The Cedar Revolution, Hariri, Tueni & our Lebanese heritage

- Syrian Assassination Cell
- Martyr Pierre Gemayel
- Marty Rafiq Hariri's Case
- Martyr Gebran Tueini

Dr. Adib Farha
Senior Policy Advisor ALC
Exe. VP Of Cardiovascular
Hospitals of America

KATAER TAMPA

NOW AOUN IS AFTER "CLEAN" MONEY AND WEAPONS COMING FROM HEZBOLLAH TO HIM AND HIS FOLLOWERS...
According to reliable sources, Aoun's son in-law Jibran Bassil, has been giving machine guns to his supporters, Where did these weapons

IT DOESN'T TAKE A GENIUS TO KNOW THAT: IF A=H, and H=T, then A=T. However, we did not ask Mr. Edward T Saadi to follow Michael Aoun: We did not ask Aoun to follow the terrorist group Hezbollah; and we did not ask Hezbollah to follow Iran and Syria. Thus, we are not to blame for Mr. Saadi's connection to Hezbollah through Aoun!!!

During his press release on Monday April 14, 2008, Michael Aoun replied to a question reassuring that his alliance with Hezbollah is not local but rather a worldwide alliance. Thus, it is

The American Lebanese Coordination Council

Page 2 of 2



imperative that followers of Aoun, especially committed ones like attorney Edward T. Saadi, issue a strong condemnation of their leader's alliance with a terrorist organization, which was up till September 1, 2001 the group that killed more Americans in a single suicide bomber than any other group. Moreover, they need to immediately cease their relationship with Aoun and disassociate themselves from his "political" group.

We hold these truths to be self-evident, That all men are created equal, That they are endowed by their Creator with certain unalienable Rights, That among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, Deriving their just powers from the consent of the governed.

© Maroun's International, LLC in Agreement with ALCC
All Rights Reserved

CASE NO.: 07-CV-01976-SCB-MAP

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDWARD T. SAADI, an Individual,

Plaintiff,

v.

PIERRE A. MAROUN, ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ an individual, JOHN DOE #3, aka
"Bashir4Ever," an individual whose name is
presently unknown, JOHN DOE #4, aka
"Bush," an individual whose name is presently
unknown, JOHN DOE #5, aka "b2a3kafra," an
individual whose name is presently unknown,
and JOHN DOES #6-12, individuals,
corporations, organizations, or other legal
entities whose names are presently unknown,
Defendants

Plaintiff

AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND
DAMAGES AND DEMAND FOR
JURY TRIAL AMENDED
COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES AND
DEMAND FOR JURY TRIAL

EDWARD T. SAADI ("Saadi"), *pro-se*, hereby sues Defendants, PIERRE A. MAROUN,
▮▮▮▮▮▮▮▮▮▮▮▮▮ and JOHN DOES #3-12, in this action for injunctive relief and
damages and states:

## INTRODUCTION
1. This is an action for injunctive relief and damages arising out of the posting of false
and defamatory statements on an internet "blog" and on internet forums by or with
the assistance or participation of Defendants.

## JURISDICTION AND VENUE
2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this
is an action for money damages between citizens of different States, in which the
amount in controversy exceeds $75,000.00, exclusive of interest and costs.
3. Venue is properly laid in the United States District Court for the Middle District of
Florida, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving
rise to the claims alleged by Saadi occurred in this district; specifically, defamatory
statements regarding Saadi were posted to the internet in this district, and/or by using
using computers and servers located in this district. Venue is also properly laid in this

# EXHIBIT "H"

District because one or more Defendants are subject to personal jurisdiction in this district and there is no other district in which the action may otherwise be brought.

4. Defendants are subject to personal jurisdiction in Florida and this district because they: (a) are residents of Florida and this district; (b) have their principal place of business in Florida and this district; (c) engaged in substantial and not isolated activities in Florida and this district; (d) committed tortious acts within Florida and this district; (e) caused injury to persons located in Florida and this district, while at the same time they engaged in solicitation and service activities within Florida and this district; and/or (f) engaged in unlawful conduct in this Florida and this district, specifically, by publishing false and defamatory statements about Saadi within Florida and this district, and/or using computers and servers located in Florida and this district.

**PARTIES**

5. Saadi is an individual and citizen of the United States and a resident and citizen of the State of Ohio.

6. Defendant Pierre A. Maroun is an individual and citizen of the United States and a resident and citizen of the State of Florida.

7. Defendant ▮▮▮▮▮▮▮ is an individual and is, on information and belief, a citizen of the United States and a resident of the State of Florida.

8. The true name of Defendant JOHN DOE #3, aka "Bashir4Eever," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #3's true name in place of the fictitious name when the same has become known to Saadi.

9. The true name of Defendant JOHN DOE #4, aka "Bush," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #4's true name in place of the fictitious name when the same has become known to Saadi.

10. The true name of Defendant JOHN DOE #5, aka "b2a3kafra," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #5's true name in place of the fictitious name when the same has become known to Saadi.

11. The true names of Defendants JOHN DOES #6-12, are unknown to Saadi, who therefore sues said Defendants under such fictitious names. Saadi is informed and believes, and on such information and belief alleges, that each of Defendants JOHN DOES #6-12 published false and defamatory statements concerning Saadi on an internet "blog," on internet forums, and/or other internet sites or assisted or participated in the doing of same by other Defendants. Saadi will seek leave of court to amend this Amended Complaint and insert their true names in place of their fictitious names when the same have become known to Saadi.

**COMMON ALLEGATIONS**

12. Saadi is a 1993 graduate of Georgetown University and a 1996 graduate of the Georgetown University School of Law. Saadi is an attorney licensed to practice law in state and/or federal courts in Ohio, California, Michigan, and the District of

Columbia. Saadi is the sole member of a law firm located in Boardman, Ohio.

13. The Internet is the world's largest network of computer networks. It is a decentralized, global medium of communications that links people and businesses around the world, allowing instantaneous sharing of information. In recent years, the commercial aspects of the Internet have mushroomed, with millions upon millions of individuals and commercial enterprises engaging in daily transactions and making financial and business decisions based upon information found on the Internet. Currently, tens of millions of computers in the United States alone are linked directly to the Internet, and more than 100 million users connect to the Internet worldwide. Countless users spend hours browsing the Internet each day, scouring different sites for information relevant to their business, financial and personal decisions.

14. The World Wide Web (the "Web") is the most popular way to provide and retrieve information on the Internet. Anyone with access to the Internet and proper software can post content on the Web, which may contain many different types of digital information—text, images, sound, and even video. The Web is comprised of millions of separate but interconnected "Web sites" which in turn may have hundreds of separate "Web pages" that display content provided by particular persons or organizations.

15. Google, Inc. ("Google") is a global Internet media company, whose "Google" Web Site (http://www.google.com) is one of the most popular destinations on the Web.

16. Among Google's most popular offerings is its Web site known as "BlogSpot" (http://www.blogspot.com), in which users can design, build, and publish an on-line publicly accessible diary known as a "blog." Such blogs can be viewed and read by anyone with access to the Web. Each day, countless users around the world read these blogs.

17. One blog available on Google's "BlogSpot" Web site is located at http://biggestloosers.blogspot.com (hereinafter the "Blog").

18. Other Web sites contain "forums" in which users can engage in anonymous interactive written public discussions. Such forums can be viewed and read by anyone with access to the Web. Each day countless users around the world read and post contributions to these forums. Two Web sites which contain such forums are located at www.lebforces.org and www.bachirgemayel.org (hereinafter the "Forums").

19. Defendants PIERRE A. MAROUN, ███████████, and JOHN DOES #3-12 have posted false and defamatory statements regarding Saadi on the Blog using the alias "Losers." Examples of these postings are attached hereto as Exhibits "A," "B," and "C."

20. Defendants PIERRE A. MAROUN, ███████████, and JOHN DOES #3-12 have re-posted said false and defamatory statements regarding Saadi to the Forums using the aliases "Bashir4Ever," "Bush," and "b2a3kafra." Examples of these re-postings are attached hereto as Exhibits "D" and "E."

21. Since their posting, the false and defamatory statements regarding Saadi have remained available to millions of Internet users, many of whom may have made copies of the false and defamatory statements and/or redistributed them by electronic mail or other means and/or re-posted them on other Web sites, forums, and blogs, and

Saadi has no means of removing these false and defamatory statements from the Internet.

22. On February 1, 2008, Saadi served Pierre A. Maroun and ████████████ with a written notice pursuant to Fla. Stat. Ann. §770.01 of the false and defamatory material and demanded that defendant remove, and publish a retraction of, said statements, but said Defendants have failed and refused to remove or retract any of the defamatory material. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "F."

23. All conditions precedent to the maintenance of this action have been performed, discharged, waived, or otherwise satisfied.

## COUNT I – DEFAMATION

24. Paragraphs 1-23 are hereby re-alleged and incorporated herein by reference.

25. Defendants published, and re-published, false and defamatory statements about Saadi, including those contained in the postings to the Blog and the Forums.

26. The false and defamatory statements published by Defendants regarding Saadi, as reasonably understood, impugn the integrity and competence of Saadi, discredit Saadi's business methods, undermine the confidence of the public and Saadi's clients in Saadi's business, and/or drive away the public and Saadi's clients from using Saadi's services.

27. The false and defamatory statements published by the Defendants, when considered alone, without innuendo, tend to subject Saadi to hatred, distrust, ridicule, contempt, or disgrace, tend to injure Saadi in his trade or profession, and/or attribute to Saadi conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office.

28. The false and defamatory statements published by the Defendants accuse Saadi of having committed, or having participated in the commission of, serious crimes.

29. Defendants owed and owe a duty to Saadi to not publish false and defamatory statements about Saadi. In publishing the false and defamatory statements about Saadi, Defendants breached that duty.

30. In publishing the false and defamatory statements about Saadi, Defendants knew, or in the exercise of reasonable care should have known, that the statements were false.

31. In publishing the false and defamatory statements about Saadi, Defendants acted with malice, actual malice, with knowledge that the statements were false, and/or with reckless disregard for their truth or falsity.

32. As a result of the foregoing publications of defamatory statements by Defendants, Saadi has been damaged, including but not limited to damage to his reputation, and loss of business.

33. In carrying out the foregoing conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions and the rights of Saadi.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

## COUNT II -- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34. Paragraphs 1-33 are hereby re-alleged and incorporated herein by reference.

35. The Defendants, by and through the making of such false, defamatory, and libelous statements, behaved intentionally and/or recklessly.

36. The Defendants, by and through the making of such false, defamatory, and libelous statements, intended to cause emotional distress upon Saadi.

37. The Defendants' making of such false, defamatory, and libelous statements was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

38. Saadi suffered severe emotional distress and emotional injury.

39. The Defendants' actions, as aforesaid, were the direct and proximate cause of such severe emotional distress and emotional injury to Saadi.

40. Saadi suffered and continues to suffer mental anguish as a result of being defamed and libeled by the Defendants, and said mental anguish is of a nature that no reasonable person could be expected to endure.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

## COUNT III – PRELIMINARY AND PERMANENT INJUNCTION

41. Paragraphs 1-40 are hereby re-alleged and incorporated herein by reference.

42. Upon information and belief, some or all of the improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Saadi will continue to be damaged by same.

43. In the absence of the entry of a preliminary and permanent injunction by the Court, Saadi will suffer serious and irreparable harm and injury, including but not limited to damage to his reputation, and loss of business.

44. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because they are required as a matter of law to refrain from disseminating defamatory statements regarding Saadi.

45. Public policy favors the entry of a preliminary and permanent injunction because, *inter alia*, such relief will prevent unlawful conduct, will preserve and protect Saadi's reputation, and will promote business, thereby encouraging economic prosperity.

46. The aforesaid publications of false and defamatory statements by the Defendants has interfered with and is interfering with Saadi's present and prospective business relationships.

WHEREFORE, Saadi demands the entry of a preliminary and permanent injunction preventing the Defendants from disseminating (via the internet or any other means) any false and defamatory statement regarding Saadi and requiring Defendants to take all steps available and necessary to remove the false and defamatory statements published by Defendants from the internet.

Dated this 9th day of February, 2008 s/ Edward T. Saadi .
EDWARD T. SAADI
*Pro-Se* Plaintiff
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

**JURY DEMAND**
Plaintiff Edward T. Saadi hereby requests a trial by jury.
Dated this 9th day of February, 2008 s/ Edward T. Saadi .
EDWARD TUFIC SAADI
*Pro-Se* Plaintiff
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

Case 8:07-cv-01976-SCB-MAP Document 7-7 Filed 02/09/2008 Page 2 of 2

LAW OFFICE OF
## EDWARD T. SAADI, LLC
970 WINDHAM COURT, SUITE 7
BOARDMAN, OHIO 44512

TEL: (330) 782-1954  FAX: (330) 266-7489
EMAIL: EdwardSaadi@aol.com
ADMITTED TO PRACTICE IN OHIO, CALIFORNIA, & WASHINGTON, D.C.

March 20, 2008

**VIA FACSIMILE TO (888) 672-7347 & REGULAR MAIL**

**RE: Notice Pursuant to Fla. Stat. Ann. §770.01 and Demand for Retraction
Saadi v. Maroun, et al.  07-CV-1976-SCB-MAP**

Jill A. Schuh, Esq.
Segal & Schuh
13575 58th Street, Suite 140
Clearwater, FL  33760

Dear Ms. Schuh,

I understand that you represent the Defendants in the above-referenced matter.

This notice is being served upon you pursuant to Fla. Stat. Ann. §770.01.  Please be advised that your client Pierre Maroun has in the past 48 hours posted additional statements to the Website located at http://www.alcc-research.com/news_articles/Aoun_VS_Maroun.html which are false and defamatory.  Those false and defamatory statements are attached.

Demand is hereby made that your clients immediately and completely remove said statements from the Internet, and that they publish an immediate full and fair retraction in as conspicuous a place and type as the original.  Please be advised that immediately upon the termination of the required statutory period, I intend to seek leave of court to file a Second Amended Complaint to include such new defamatory statements.

Should your clients comply with this demand, pursuant to Fla. Stat. Ann. §770.02 I may be limited to a recovery of actual damages for said new defamatory statements.  Conversely, should your clients fail to comply with this demand, I will not be so limited, and may be entitled to all damages available in law, including, but not limited to, both actual and punitive damages.

Signed this 20th day of March, 2008

Edward T. Saadi, Esq.

# EXHIBIT "I"

The American Lebanese Coordination Council                    Page 1 of 1



Aoun/Hezbollah war of terror against March 14ers reaches The US Federal Court!

When General Michael Aoun was shouting fancy slogans from his comfortable home in Paris, many Lebanese viewed him as the Godfather of resistance, the man of principles, and the ultimate defender of Freedom and Democracy. Therefore, some cherished him, others idolized him, and few criticized him for they saw his real color. Thus, when this few exposed his dirty dealings with Syria and Hezbollah, similar to Paul Shaoul, Fares Khashan, Bassam Abu Eid, et. al. Aoun turned his fangs and claws on us. Therefore, when the threats of the Syrio/Lebanese security apparatus/terrorists on his behalf to silence us failed, Aoun unleashed his disgraceful and treacherous followers in the US to teach us a lesson.

Accordingly, the all mighty Aoun machine in the US waisted no time. After all, they, too, were hungry to punish those who dared to expose Aoun's treacherous politics as well as his mental condition. The end result of their hard work was filling a frivolous lawsuit against us in the US Federal Court. BRAVO Mr. Aoun. This was the only imprudent act could do to prove us right, and you did it.

While we await the trial's results, we assure Aoun and his followers that we will not stop expressing our sacred rights to freedom of expression, as well as our right to know the truth about our "elected" officials. Moreover, we will not hesitate to hold them accountable for their unethical as well as criminal misdeeds. Therefore, we assure you that we will continue exposing Aoun, his mob, and all others' treacherous and criminal activities.

The LAWSUIT PDF

The article that triggered it all and discussions to sue the writer PDF

We hold these truths to be self-evident, That all men are created equal, That they are endowed by their Creator with certain unalienable Rights, That among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, Deriving their just powers from the consent of the governed.

© Maroun's International, LLC in Agreement with ALCC
All Rights Reserved

CASE NO.: 07-CV-01976-SCB-MAP

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EDWARD T. SAADI, an Individual,

Plaintiff,

v.

PIERRE A. MAROUN, ███████████
███████████████████████████████
██████████ an individual, JOHN DOE #3, aka
"Bashir4Ever," an individual whose name is
presently unknown, JOHN DOE #4, aka
"Bush," an individual whose name is presently
unknown, JOHN DOE #5, aka "b2a3kafra," an
individual whose name is presently unknown,
and JOHN DOES #6-12, individuals,
corporations, organizations, or other legal
entities whose names are presently unknown,
Defendants

**AMENDED COMPLAINT FOR
INJUNCTIVE RELIEF AND
DAMAGES AND DEMAND FOR
JURY TRIAL AMENDED
COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES AND
DEMAND FOR JURY TRIAL**

Plaintiff
EDWARD T. SAADI ("Saadi"), *pro-se*, hereby sues Defendants, PIERRE A. MAROUN,
█████████████████████ and JOHN DOES #3-12, in this action for injunctive relief and
damages and states:

**INTRODUCTION**
1. This is an action for injunctive relief and damages arising out of the posting of false
and defamatory statements on an internet "blog" and on internet forums by or with
the assistance or participation of Defendants.

**JURISDICTION AND VENUE**
2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this
is an action for money damages between citizens of different States, in which the
amount in controversy exceeds $75,000.00, exclusive of interest and costs.
3. Venue is properly laid in the United States District Court for the Middle District of
Florida, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving
rise to the claims alleged by Saadi occurred in this district; specifically, defamatory
statements regarding Saadi were posted to the internet in this district, and/or by using
using computers and servers located in this district. Venue is also properly laid in this

District because one or more Defendants are subject to personal jurisdiction in this district and there is no other district in which the action may otherwise be brought.
4. Defendants are subject to personal jurisdiction in Florida and this district because they: (a) are residents of Florida and this district; (b) have their principal place of business in Florida and this district; (c) engaged in substantial and not isolated activities in Florida and this district; (d) committed tortious acts within Florida and this district; (e) caused injury to persons located in Florida and this district, while at the same time they engaged in solicitation and service activities within Florida and this district; and/or (f) engaged in unlawful conduct in this Florida and this district, specifically, by publishing false and defamatory statements about Saadi within Florida and this district, and/or using computers and servers located in Florida and this district.

**PARTIES**
5. Saadi is an individual and citizen of the United States and a resident and citizen of the State of Ohio.
6. Defendant Pierre A. Maroun is an individual and citizen of the United States and a resident and citizen of the State of Florida.
7. Defendant ███████████ is an individual and is, on information and belief, a citizen of the United States and a resident of the State of Florida.
8. The true name of Defendant JOHN DOE #3, aka "Bashir4Eever," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #3's true name in place of the fictitious name when the same has become known to Saadi.
9. The true name of Defendant JOHN DOE #4, aka "Bush," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #4's true name in place of the fictitious name when the same has become known to Saadi.
10. The true name of Defendant JOHN DOE #5, aka "b2a3kafra," is unknown to Saadi, who therefore sues this Defendant under such fictitious name. Saadi will ask leave of court to amend this Amended Complaint and insert Defendant JOHN DOE #5's true name in place of the fictitious name when the same has become known to Saadi.
11. The true names of Defendants JOHN DOES #6-12, are unknown to Saadi, who therefore sues said Defendants under such fictitious names. Saadi is informed and believes, and on such information and belief alleges, that each of Defendants JOHN DOES #6-12 published false and defamatory statements concerning Saadi on an internet "blog," on internet forums, and/or other internet sites or assisted or participated in the doing of same by other Defendants. Saadi will seek leave of court to amend this Amended Complaint and insert their true names in place of their fictitious names when the same have become known to Saadi.

**COMMON ALLEGATIONS**
12. Saadi is a 1993 graduate of Georgetown University and a 1996 graduate of the Georgetown University School of Law. Saadi is an attorney licensed to practice law in state and/or federal courts in Ohio, California, Michigan, and the District of

Columbia. Saadi is the sole member of a law firm located in Boardman, Ohio.

13. The Internet is the world's largest network of computer networks. It is a decentralized, global medium of communications that links people and businesses around the world, allowing instantaneous sharing of information. In recent years, the commercial aspects of the Internet have mushroomed, with millions upon millions of individuals and commercial enterprises engaging in daily transactions and making financial and business decisions based upon information found on the Internet. Currently, tens of millions of computers in the United States alone are linked directly to the Internet, and more than 100 million users connect to the Internet worldwide. Countless users spend hours browsing the Internet each day, scouring different sites for information relevant to their business, financial and personal decisions.

14. The World Wide Web (the "Web") is the most popular way to provide and retrieve information on the Internet. Anyone with access to the Internet and proper software can post content on the Web, which may contain many different types of digital information—text, images, sound, and even video. The Web is comprised of millions of separate but interconnected "Web sites" which in turn may contain hundreds of separate "Web pages" that display content provided by particular persons or organizations.

15. Google, Inc. ("Google") is a global Internet media company, whose "Google" Web Site (http://www.google.com) is one of the most popular destinations on the Web.

16. Among Google's most popular offerings is its Web site known as "BlogSpot" (http://www.blogspot.com), in which users can design, build, and publish an on-line publicly accessible diary known as a "blog." Such blogs can be viewed and read by anyone with access to the Web. Each day, countless users around the world read these blogs.

17. One blog available on Google's "BlogSpot" Web site is located at http://biggestloosers.blogspot.com (hereinafter the "Blog").

18. Other Web sites contain "forums" in which users can engage in anonymous interactive written public discussions. Such forums can be viewed and read by anyone with access to the Web. Each day countless users around the world read and post contributions to these forums. Two Web sites which contain such forums are located at www.lebforces.org and www.bachirgemayel.org (hereinafter the "Forums").

19. Defendants PIERRE A. MAROUN, ███████████, and JOHN DOES #3-12 have posted false and defamatory statements regarding Saadi on the Blog using the alias "Losers." Examples of these postings are attached hereto as Exhibits "A," "B," and "C."

20. Defendants PIERRE A. MAROUN, ███████████, and JOHN DOES #3-12 have re-posted said false and defamatory statements regarding Saadi to the Forums using the aliases "Bashir4Ever," "Bush," and "b2a3kafra." Examples of these re-postings are attached hereto as Exhibits "D" and "E."

21. Since their posting, the false and defamatory statements regarding Saadi have remained available to millions of Internet users, many of whom may have made copies of the false and defamatory statements and/or redistributed them by electronic mail or other means and/or re-posted them on other Web sites, forums, and blogs, and

Saadi has no means of removing these false and defamatory statements from the Internet.

22. On February 1, 2008, Saadi served Pierre A. Maroun and ███████████ with a written notice pursuant to Fla. Stat. Ann. §770.01 of the false and defamatory material and demanded that defendant remove, and publish a retraction of, said statements, but said Defendants have failed and refused to remove or retract any of the defamatory material. A copy of Saadi's written notice and demand for retraction is attached as Exhibit "F."

23. All conditions precedent to the maintenance of this action have been performed, discharged, waived, or otherwise satisfied.

**COUNT I – DEFAMATION**

24. Paragraphs 1-23 are hereby re-alleged and incorporated herein by reference.

25. Defendants published, and re-published, false and defamatory statements about Saadi, including those contained in the postings to the Blog and the Forums.

26. The false and defamatory statements published by Defendants regarding Saadi, as reasonably understood, impugn the integrity and competence of Saadi, discredit Saadi's business methods, undermine the confidence of the public and Saadi's clients in Saadi's business, and/or drive away the public and Saadi's clients from using Saadi's services.

27. The false and defamatory statements published by the Defendants, when considered alone, without innuendo, tend to subject Saadi to hatred, distrust, ridicule, contempt, or disgrace, tend to injure Saadi in his trade or profession, and/or attribute to Saadi conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office.

28. The false and defamatory statements published by the Defendants accuse Saadi of having committed, or having participated in the commission of, serious crimes.

29. Defendants owed and owe a duty to Saadi to not publish false and defamatory statements about Saadi. In publishing the false and defamatory statements about Saadi, Defendants breached that duty.

30. In publishing the false and defamatory statements about Saadi, Defendants knew, or in the exercise of reasonable care should have known, that the statements were false.

31. In publishing the false and defamatory statements about Saadi, Defendants acted with malice, actual malice, with knowledge that the statements were false, and/or with reckless disregard for their truth or falsity.

32. As a result of the foregoing publications of defamatory statements by Defendants, Saadi has been damaged, including but not limited to damage to his reputation, and loss of business.

33. In carrying out the foregoing conduct, Defendants acted negligently, willfully, maliciously, and/or with reckless indifference to the consequences of their actions and the rights of Saadi.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

**COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

34. Paragraphs 1-33 are hereby re-alleged and incorporated herein by reference.

35. The Defendants, by and through the making of such false, defamatory, and libelous statements, behaved intentionally and/or recklessly.

36. The Defendants, by and through the making of such false, defamatory, and libelous statements, intended to cause emotional distress upon Saadi.

37. The Defendants' making of such false, defamatory, and libelous statements was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

38. Saadi suffered severe emotional distress and emotional injury.

39. The Defendants' actions, as aforesaid, were the direct and proximate cause of such severe emotional distress and emotional injury to Saadi.

40. Saadi suffered and continues to suffer mental anguish as a result of being defamed and libeled by the Defendants, and said mental anguish is of a nature that no reasonable person could be expected to endure.

WHEREFORE, Saadi demands judgment against Defendants, jointly and severally, for money damages in an amount to be proved at trial but which is in excess of $75,000.00, punitive damages, pre- and post-judgment interest, attorney's fees, litigation expenses, and costs.

**COUNT III – PRELIMINARY AND PERMANENT INJUNCTION**

41. Paragraphs 1-40 are hereby re-alleged and incorporated herein by reference.

42. Upon information and belief, some or all of the improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and Saadi will continue to be damaged by same.

43. In the absence of the entry of a preliminary and permanent injunction by the Court, Saadi will suffer serious and irreparable harm and injury, including but not limited to damage to his reputation, and loss of business.

44. The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants because they are required as a matter of law to refrain from disseminating defamatory statements regarding Saadi.

45. Public policy favors the entry of a preliminary and permanent injunction because, *inter alia,* such relief will prevent unlawful conduct, will preserve and protect Saadi's reputation, and will promote business, thereby encouraging economic prosperity.

46. The aforesaid publications of false and defamatory statements by the Defendants has interfered with and is interfering with Saadi's present and prospective business relationships.

WHEREFORE, Saadi demands the entry of a preliminary and permanent injunction preventing the Defendants from disseminating (via the internet or any other means) any false and defamatory statement regarding Saadi and requiring Defendants to take all steps available and necessary to remove the false and defamatory statements published by Defendants from the internet.

Dated this 9th day of February, 2008 s/ Edward T. Saadi .
EDWARD T. SAADI
*Pro-Se* Plaintiff
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

**JURY DEMAND**
Plaintiff Edward T. Saadi hereby requests a trial by jury.
Dated this 9th day of February, 2008 s/ Edward T. Saadi .
EDWARD TUFIC SAADI
*Pro-Se* Plaintiff
970 Windham Court, Ste 7
Boardman, Ohio 44512
(330) 782-1954
(330) 266-7489 (fax)
EdwardSaadi@aol.com

Case 8:07-cv-01976-SCB-MAP Document 7-7 Filed 02/09/2008 Page 2 of 2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD T. SAADI, an Individual,
        Plaintiff,

v.

PIERRE A. MAROUN, aka "Losers," an
individual, HALA FAKHRE MAROUN aka
HALA MAROUN aka HALA FAKHRE aka
"Losers," an individual, JOHN DOE #3, aka
"Bashir4Ever," an individual whose name is
presently unknown, JOHN DOE #4, aka
"Bush," an individual whose name is presently
unknown, JOHN DOE #5, aka "b2a3kafra," an
individual whose name is presently unknown,
and JOHN DOES #6-12, individuals,
corporations, organizations, or other legal
entities whose names are presently unknown,
        Defendants.

Case No.: 8:07-CV-01976-SCB-MAP

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT OR IN THE ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

COME NOW Defendants Pierre A. Maroun and Hala Fakhre Maroun, by and through

their undersigned attorneys, and file this Motion To Dismiss Second Amended Complaint for

failure to state a claim upon which relief can be granted, or, in the alternative, a Motion For A

More Definite Statement, and in support state as follows.

1.      The Plaintiff, Edward T. Saadi ("Saadi"), filed his original complaint on

November 1, 2007, and the action was designated as a "Track 2" case by the Court under Local

Rule 3.05 on November 5, 2007.



EXHIBIT
B

2.    Prior to service on the Defendants, Saadi filed an Amended Complaint on February 9, 2008, which was served on Defendants Pierre A. Maroun and Hala Fakhre Maroun ("Marouns") on February 19, 2008.

3.    The Marouns filed a Motion To Dismiss Amended Complaint on March 20, 2008, which was denied as moot by the Court on May 5, 2008.

4.    Saadi filed a Motion For Leave To File Second Amended Complaint on April 4, 2008, which was granted on May 1, 2008.

5.    This diversity jurisdiction case includes a claim for defamation, for intentional infliction of emotional distress, and for injunctive relief against all twelve named and unnamed Defendants, for posting allegedly defamatory statements about Saadi on the Internet.

6.    The Second Amended Complaint, which was filed electronically on May 4, 2008, added a new Defendant, Maroun's International, LLC, added facts regarding new publication of allegedly defamatory statements on the Internet, and a revised claim for intentional infliction of emotional distress.

7.    In evaluating a motion to dismiss, the court is required to accept the facts alleged by the Plaintiff as true, and to view those facts in the light most favorable to the Plaintiff.

8.    Dismissal of a complaint is justified when it appears that the plaintiff cannot prove material facts that would entitle him or her to relief, or when a complaint can be dismissed on a dispositive issue of law.

9.    In Florida, to state a cause of action for defamation, a private person must allege publication of false and defamatory statements of and concerning that private person, without reasonable care as to the truth or falsity of those statements, which have resulted in actual damage to that private person.

2

10.    Under Count I, the Second Amended Complaint fails to state a claim upon which relief can be granted because the statements claimed by Saadi to be "false and defamatory" are either statements of opinion that are not actionable, or are publicly filed documents prepared by the Plaintiff himself, none of which constitute defamation under Florida law.

11.    Under Count I, the Second Amended Complaint also fails to state a claim upon which relief can be granted because Saadi has not alleged that the Marouns were responsible for publishing the allegedly defamatory statements of which he complains.

12.    Furthermore, the Second Amended Complaint alleges that the Marouns defamed Saadi by republishing Saadi's First Amended Complaint, which is a public document. As this document is authored by Saadi and contained in the public domain, it cannot constitute defamation as a matter of law.

13.    Under Count II, the Second Amended Complaint fails to state a claim upon which relief can be granted because the statements complained of do not rise to the level of conduct that is so extreme and outrageous as to constitute an intentional infliction of emotional distress.

14.    A tort action for the intentional infliction of emotional distress requires the pleading of conduct that is so outrageous and extreme in character, that it goes beyond all possible bounds of decency, and is regarded as atrocious and utterly intolerable in a civilized community. The determination of "outrageousness" is made as a matter of law.

15.    Additionally, Saadi's allegations in Count II that Pierre A. Maroun engaged in a "systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family" are so broad, vague, and ambiguous that Defendant Pierre A. Maroun cannot formulate an answer as there are no allegations of ultimate facts contained within Count II specifying dates, the actual actions or words used, as well as the means of communications involved.

3

16. Saadi alleges that he is a resident of Ohio. He further alleges that Pierre A. Maroun is a resident of Florida. Nowhere in his Second Amended Complaint does Saadi specify how Maroun has intimidated, bullied, terrorized, threatened, or menaced Saadi from thousands of miles away.

17. Count II of the Second Amended Complaint does not properly plead the ultimate facts necessary for the relief requested, and the allegations of Count II are so broad, vague and ambiguous as to make it impossible for the Marouns to frame a proper response.

18. Since Saadi's claim for intentional infliction of emotional distress (Count II) and claim for injunctive relief (Count III) are both dependent on a viable defamation claim, as well as being broad, vague, and ambiguous, all three claims should be dismissed with prejudice for the above stated reasons.

WHEREFORE Defendants Pierre A. Maroun and Hala Fakhre Maroun respectfully request that this Honorable Court grant their Motion and dismiss all three counts of the Second Amended Complaint, or, in the alternative, dismiss Count I and III, and order the Plaintiff to file a more definite statement regarding Count II, or dismiss the Marouns as Defendants from each of the three counts with prejudice, and for any and all other relief that is just and proper.

<u>MEMORANDUM OF LAW IN SUPPORT OF</u>
<u>DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</u>

Defendants Pierre A. Maroun and Hala Fakhre Maroun ("Marouns") have filed herein their Motion To Dismiss Second Amended Complaint Or In The Alternative Motion For A More Definite Statement for Plaintiff's failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and all other applicable laws and rules. The Marouns have requested that this Court grant their Motion and dismiss this action, and respectfully submit this Memorandum of Law In Support of their Motion.

4

## SUMMARY OF FACTS

On May 5, 2008, Plaintiff Edward T. Saadi ("Saadi") filed a Second Amended Complaint, which named as defendants, Pierre A. Maroun, Hala Fakhre Maroun, Maroun International, LLC, and John Does "3" thorough "12." The Second Amended Complaint claims that Saadi has been harmed by defamatory statements allegedly posted by the Defendants on an Internet "blog" and on two different Internet "forums." The Second Amended Complaint includes counts for defamation, for intentional infliction of emotional distress, and for an injunction to prevent the further posting of the alleged "defamatory statements" and to require the removal of those same statements from the Internet. Saadi has alleged diversity jurisdiction under 28 U.S.C. §1332 because he is a resident of Ohio and the Marouns reside in Florida, and has further alleged money damages in excess of $75,000.

Specifically, Saadi alleges that the Defendants posted "false and defamatory" statements about him on the Internet blog located at *http://biggestloosers.blogspot.com*, under the alias "Losers." 2d Am. Compl. ¶21-22. The Plaintiff further claims that the Defendants "re-posted" those same statements on two different Internet forums located at *www.lebforces.org* and *www.bachirgemayel.org*, under the aliases "Bashir4Ever," "Bush," and "b2a3kafra." 2d Am. Compl. ¶23. Saadi also claims that the Defendants published additional "defamatory statements" at *www.alcc-research.com/news_articles/Aoun_VS_Maroun.html*. 2d Am. Compl. ¶23. Saadi claims that, because Internet blogs and forums can be read by "anyone with access to the Web" that the statements complained of are "available to millions of Internet users," thus compounding his damages. 2d Am. Compl. ¶19.

In the Second Amended Complaint, Saadi does not disclose that he and Defendant Pierre Maroun are cousins, who until recently had a close familial relationship, and Saadi does not

5

disclose the materially relevant political nature of the Internet blog and forums on which the allegedly defamatory remarks were posted.

In his count for intentional infliction of emotional distress, Saadi, a resident of Ohio sets out only vague, broad, and ambiguous allegations that accuse Pierre A. Maroun, who resides in Florida, of making threats against him and his family. Saadi does not specifically refer to any single event or any specific events, acts that constitute a reasonable belief of imminent harm that could support a claim for emotional distress.

## ARGUMENT

In evaluating a motion to dismiss, a court is required to accept the facts alleged in the plaintiff's pleading as true, and to view those facts in the light most favorable to the Plaintiff. Trujillo v. Banco Central Del Ecuador, et al., 17 F.Supp. 2d 1334, 1336 (S.D. Fla. 1998) citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Dismissal of a complaint is justified when it appears that the plaintiff cannot prove material facts that would entitle him or her to relief, or when a complaint can be dismissed on a dispositive issue of law. Id at 1337, citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

The Second Amended Complaint fails to state a claim upon which relief can be granted for four reasons. First, the statements claimed by Saadi to be "false and defamatory" are opinions and do not constitute defamation under Florida law. Second, Saadi has not properly attributed the writing or posting of these allegedly defamatory statements to the Marouns. Third, the statements complained of do not rise to the level of conduct that is so extreme and outrageous as to constitute an intentional infliction of emotional distress. Fourth, the allegations supporting the claim for intentional infliction of emotional distress are so vague, broad, ambiguous that it is impossible for the Marouns to formulate an answer to them. It is for these reasons that the

6

Second Amended Complaint should be dismissed in its entirety, or, in the alternative, that Counts

I and III be dismissed as to the Marouns and an order be issued directing Saadi to file a more

definite statement as to Count II.

A.    **The Statements Alleged By Plaintiff To Be False And Defamatory Are Statements Of Opinion And Do Not Constitute Defamation Or Are In The Public Domain And Authored By Saadi Himself.**

The Florida Supreme Court has defined defamation as a false and unprivileged

publication by letter or otherwise, which exposes a person to distrust, hatred, contempt, ridicule

or obloquy or which causes such a person to be avoided, or which has a tendency to injure such

person in his office, occupation, business or employment. Cooper v. Miami Herald, 31 So. 2d

382, 384 (Fla. 1947). To state a cause of action for defamation, a private person must allege: (1)

publication of false and defamatory statements of and concerning that private person; (2) done

without reasonable care as to the truth or falsity of those statements; (3) that result in actual

damage to that private person. Hay v. Independent Newspapers, Inc., 450 So. 2d 293, 295 (Fla.

2d Dist. Ct. App. 1984); Rasmussen v. Collier County Publishing Co., 946 So. 2d 567, 571 (Fla.

2d Dist. Ct. App. 2006).

(1)    *In Florida defamation law, context matters.*

Expressions of opinion are protected by the U.S. Constitution, and the determination of

whether a statement is one of opinion or one of fact is a question of law. Hay at 295. A

statement of pure opinion is based on "facts that the communicator sets forth in a publication, or

that are otherwise known or available to the reader or the listener as a member of the public," but

a statement of mixed opinion and fact is based on facts that are "neither stated in the publication

nor assumed to exist by a party exposed to the communication." Id. The Hay court further

explained that, in determining if a statement is protected as opinion or actionable as a statement

of mixed opinion and fact, the context of the entire statement and surrounding circumstances of
its publication must be considered:

> In determining whether an alleged libelous statement is pure opinion, the court must
> construe the statement in its totality, examining not merely a particular phrase or sentence, but all
> of the words used in the publication. The court must consider the context in which the statement
> was published and accord weight to cautionary terms used by the person publishing the
> statement. All of the circumstances surrounding the publication must be considered, including
> the medium by which it was disseminated and the audience to which it was published.

Id.; see also Johnson v. Clark, 484 F.Supp. 2d 1242, 1247-248 (M.D. Fla. 2007). In determining
if a statement is defamatory, the words should be given a "reasonable construction," viewed as
the "common mind would naturally have understood them," and should not be construed in an
extreme way. Rapp v. Jews for Jesus, 944 So.2d 460, 466-467 (Fla. 4th Dist. Ct. App. 2006).

     *(2)    The political context and anonymous nature of the blog and forums.*

     In the Second Amended Complaint, Saadi generally describes an Internet blog as an "on-
line publicly accessible diary." 2d Am. Compl. ¶16. Webster defines the word "diary" as "a
daily record of personal activities, reflections, or feelings." Merriam-Webster, The Merriam-
Webster Dictionary, (New Ed., July 2004). The use of the word "personal" in the Webster
definition implies that an entry in a diary is a record of the personal opinions and experiences of
the author. Saadi alleges that the Website owned by Google, Inc. and known as "BlogSpot" is
the location for the blog named *http://biggestloosers.blogspot.com*. 2d Am. Compl. ¶¶19-20.
According to Google, Inc., "[a] blog is your easy-to-use web site, where you can quickly post
thoughts, interact with people, and more..." See Ex. 1.

8

Saadi describes Internet forums as Web sites "in which users can engage in interactive written public discussions, sometimes *anonymously or pseudonymously*." 2d Am. Compl. ¶21 (emphasis added). This allegation alone, contradicts Saadi's unsubstantiated claim that the Marouns posted defamatory statements on the named Internet forums. 2d Am. Compl. ¶¶22-23.

By definition, and as described in the Plaintiff's own allegations, the blog and the two forums on which the statements complained of by Saadi were posted are mediums of free, public discourse about political, cultural and social matters by anonymous and like-minded individuals. Saadi does not disclose in the Second Amended Complaint the materially relevant political nature of the Internet blog and forums on which the allegedly defamatory remarks were actually posted.

The Internet blog formerly located at *http://biggestloosers.blogspot.com* was a political blog focused on the posting of opposing views regarding the political situation in Lebanon, and the role of the Hezbollah terrorist organization in those events. However, it appears that this blog is currently no longer available for public viewing. See Ex. 2.

The forum "Lebanese Forces Official Forum," located at *www.lebforces.org* reports that it has 43 members and 491 guests engaged in public discourse about the Lebanese Army and the socio-political situation in Lebanon. See Ex. 3. The forum "President Bachir Gemayel Official Forum" located at *www.bachirgemayel.org* that it has 3629 members engaged in public discourse about the political conflict and violence occurring in Lebanon. See Ex. 4.

All three of these communications mediums are dedicated to anonymous, interactive, public discussions about issues of public concern, namely the political conflict and violence that has divided Lebanon in the past and recently. This type of speech is protected by the First Amendment of the U.S. Constitution, and is therefore, not defamation. Additionally, the Florida

9

Supreme Court has held that protection of the right to speak out and express opinions on

political, social and cultural matters is not just for the media, but also extends to *private*

*individuals*:

We believe, however, that the constitutionally protected right to discuss, comment upon,

criticize, and debate, indeed, the freedom to speak on any and all matters is extended not only to

the organized media but to all persons. If common-law remedies for defamation are to be

constitutionally restricted in actions against media defendants, they should also be restricted in

actions against private, non-media speakers and publishers. Nodar v. Galbreath, 462 So. 2d 803,

808 (Fla. 1985). The Nodar court extends its public policy argument further when it states that

every person has a privilege to "express to other persons his fair comment and criticism on any

public, governmental, political, social, or cultural matter." Id. at 810.

Neither the blog nor the forums named in the Second Amended Complaint are related to

Saadi's alleged business, which he claims is a law practice in Ohio. None of these political

discussion groups include business marketing or legal services referral information.

Furthermore, they are not Web sites where the public would visit for the purpose of finding a

lawyer or determining an attorney's qualifications. The blog and the forums require membership

for participation, and exist for the purpose of fostering public debate on the events surrounding

the current terrorist activity and political upheaval in Lebanon. Nor has it been alleged if any of

the approximate 4,000 members involved in these forums live in the United States, much less in

the State of Ohio, or in any other court district where Saadi is admitted to practice law.

The publication of Saadi's First Amended Complaint at the webpage *www.alcc-*

*research.com/news_articles/Aoun_VS_Maroun.html* with commentary cannot constitute

defamation, because the document is a court filing authored by Saadi and filed by Saadi in the

10

public domain. The commentary associated with the posting of this public document is clearly and obviously opinion, and therefore cannot constitute defamation as a matter of law. See Ex. G, 2d Am. Compl.

**B.    Plaintiff Has Not Attributed, And Cannot Attribute, These Allegedly Defamatory Statements To The Marouns.**

A plaintiff must be able to establish that a defendant was actually involved in publishing the defamation to prevail in a claim for damages. Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, 462 (Fla. 5th Dist. Ct. App. 1999).

Saadi attributes remarks posted by the alias "Losers" on the Internet blog located at *http://biggestloosers.blogspot.com* to the Marouns' AND to Maroun's International LLC, AND John Does #3-12. 2d Am. Compl. ¶22. The Second Amended Complaint also alleges that the Marouns' AND Maroun's International LLC, AND John Does #3-12 "re-posted" some of the same remarks on the Internet forums located at *www.lebforces.org* and *www.bachirgemayel.org* using the aliases "Bashir4Ever," "Bush," and "B2a3kafra." 2d Am. Compl. ¶23. However, at paragraph eight (8), Saadi claims that "Bashir4Ever" is an alias used by John Doe #3, and at paragraph nine (9) that John Doe #4 uses the alias "Bush," and at paragraph ten (10) that "b2a3kafra" is an alias used by John Doe #5. Saadi lists John Does #7-12 as "unknown" and attributes no aliases or acts of defamation against these six defendants. 2d Am. Compl. ¶¶8-13.

Most importantly, Saadi does not attribute any specific aliases to Defendant Pierre Maroun or Defendant Hala Fakhre Maroun. 2d Am. Compl. ¶¶22-23. In fact, the Second Amended Complaint does not contain any factual allegations that factually connect the Marouns to any of the aliases, the blog, or the internet forums on which Saadi has claimed that the allegedly defamatory statements were published. By his own allegations, the Plaintiff acknowledges that these Web sites contain *anonymous* postings on certain topics of interest, and

11

there are no facts alleged in the Second Amended Complaint that would connect the Marouns to the publication of the alleged defamation.

Although, the new claim of defamation included in the Second Amended Complaint at paragraph 23 alleges that the posting was made by Defendants Pierre Maroun and Maroun International LLC, there is no legal defamation in posting a publicly filed document authored by the Plaintiff along with opinion commentary. No specific allegation connecting Defendant Hala Fakhre Maroun to this new publication is made in the Second Amended Complaint.

The Plaintiff has failed to establish, as required, that the Marouns published defamatory statements or engaged in defamatory conduct. Without evidence that the Marouns were involved in the posting of these allegedly defamatory statements, Saadi will never prevail against the Marouns in his defamation claim or in the related claim for intentional infliction of emotional distress. Therefore, all claims in the Amended Complaint against Pierre Maroun and Hala Fakhre Maroun should be dismissed, as a matter of law and with prejudice, for failure to state a claim on which relief can be granted.

**C.    Statements Attributed To The Defendants Are Not So Extreme And Outrageous As To Support A Claim For Intentional Infliction Of Emotional Distress.**

A tort action for damages due to the intentional infliction of emotional distress requires the pleading of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Metropolitan Life Insurance Co. v. McCarson, 467 So. 2d 277, 278-279 (Fla. 1985) and Rapp v. Jews for Jesus, 944 So.2d 460, 466-467 (Fla. 4th Dist. Ct. App. 2006) (both quoting Restatement (Second) of Torts §46 (1965)). Whether conduct is extreme and outrageous enough to support a claim for intentional infliction of emotional distress is to be determined by a court as a matter of law. Rapp at 466-467, citing Gandy v. Trans World

12

Computer Tech. Group, 787 So. 2d 116, 119 (Fla. 2d Dist. Ct. App. 2001). Furthermore, "the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort occurred." Rapp at 467.

It is not sufficient to simply plead the bare elements of a claim for intentional infliction of emotional distress without alleging ultimate facts upon which the court can determine whether the claim can be sustained under the objective, reasonable person standard. See Liberty Mutual Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d. Dist. Ct. App. 2007) and Baker v. Florida Natl. Bank, 559 So. 2d 284, 287 (Fla. 4th Dist. Ct. App. 1990).

While Saadi may be offended by the statements he has alleged defame him in these Web posting, there is nothing in the statements that would rise to the level of being "outrageous" or "beyond all possible bounds of decency." The opinions expressed in these posting could not have caused the extreme "mental anguish" claimed by Saadi that "no reasonable person could be expected to endure." 2d Am. Comp. ¶53.

Saadi's failure to meet the "reasonable person" test in his claim for intentional infliction of emotional distress is compounded by the fact that Saadi cannot link the Marouns to any specific act of publishing a defamatory statement against him. Since the claim for intentional infliction of emotional distress is inextricably intertwined with the defamation claim and Saadi cannot plead specific facts regarding the alleged threats of harm against him, Count II should be dismissed for the above stated reasons.

**D.      Saadi's Claim For Intentional Infliction Of Emotional Distress Is Broad, Vague, And Ambiguous And Cannot Be Properly Answered As Pled.**

Florida courts have long declined to allow recovery for such distress claims when there is no evidence that the defendant has the "apparent present ability" to carry out such harm. Baker at 288. The fact that Saadi resides in Ohio and the Marouns reside in Florida, without more

13

specific allegations, make it impossible for Saadi to claim any reasonable belief that he or his family members (who are also related to the Marouns) were under any credible or imminent threat of harm.

Saadi's allegations that Pierre A. Maroun engaged in a "systematic effort to intimidate, bully, terrorize, threaten, and menace Saadi and his family" is so broad, vague, and ambiguous that Defendant Pierre Maroun cannot formulate an answer. Saadi fails to allege any ultimate facts in Count II that specify dates, actual actions or words used, or the means of communication involved. Saadi alleges that he is a resident of Ohio. He further alleges that Pierre A. Maroun is a resident of Florida. Nowhere in his Second Amended Complaint does Saadi specify how Maroun has carried out his "systematic effort to intimidate, bully, terrorize, threaten, and menace" Saadi, nor has he alleged facts that show that this alleged harm was reasonably imminent. Instead, Saadi makes a broad, vague statement that cannot sustain a cause of action for intentional infliction of emotional distress. Saadi has failed to allege any ultimate facts that would tend to establish Defendant Pierre Maroun's liability to Saadi for the intentional infliction of emotional distress.

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice for failure to state a cause of action upon which relief can be granted. The Plaintiff failed to properly allege the elements in his defamation claim, and the statements complained of should be considered constitutionally protected opinion and not actionable. The statements made, read in the light most favorable to the Plaintiff, do not constitute conduct so extreme and outrageous as to meet the legal requirements for a proper claim for intentional infliction of emotional distress. If there is no actionable defamation claim, then the Plaintiff's claim for injunctive relieve is also

14

extinguished. In the alternative, the Court should require Saadi to allege ultimate facts relating to his alleged emotional distress so that Pierre Maroun can formulate an answer to each allegation contained in the Second Amended Complaint.

Dated this 20th day of May, 2008.

Respectfully submitted by,

/s Jill A. Schuh

Jill Schuh, Esquire (FBN: 36453)
Lior Segal, Esquire (FBN: 37837)
SEGAL & SCHUH LAW GROUP, P.L.
13575 58th Street North, Suite 140
Clearwater, Florida 33760
Tel: 727-824-5775 / Fax: 888-672-7347
Jill@segalschuh.com/Lee@segalschuh.com
Attorneys for Defendants Pierre Maroun and
Hala Maroun

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the court and delivered to the Plaintiff on this 20th day of May, 2008, and sent by regular U.S. Mail to Edward Saadi at 970 Windham Court, Suite 7, Boardman, Ohio 44512, on May 20, 2008.

/s Jill A. Schuh

Jill Schuh, Esquire (FBN: 36453)
Lior Segal, Esquire (FBN: 37837)
SEGAL & SCHUH LAW GROUP, P.L.
13575 58th Street North, Suite 140
Clearwater, Florida 33760
Tel: 727-824-5775 / Fax: 888-672-7347
Jill@segalschuh.com/Lee@segalschuh.com
Attorneys for Defendants Pierre Maroun and
Hala Maroun

15

Language:  **English**



**Sign in to use Blogger**
with your Google Account

Username (Email):          Password: (?)

SIGN IN                    ☐ Remember me (?)

**BLOGS UPDATED AT 6:39 PM**
idiotic

**BLOGS OF NOTE**
Backcountry Blog     more »

What's a **blog**?          TAKE A QUICK TOUR          Create a **blog** in **3** easy steps:

Create an account

Name your blog

**Publish**     **Get**      **Post**     **Go**     Choose a template
thoughts     feedback     photos     mobile

A blog is your easy-to-use web site, where you can quickly post     CREATE YOUR BLOG NOW
thoughts, interact with people, and more. All for FREE.

Home | About | Buzz | Help | Discuss | Language | Developers | Gear
Terms of Service | Privacy | Content Policy | Copyright © 1999 - 2008 Google

# EXHIBIT 1

MAR-20-2008 16:17 FROM:M.PENA/A.STAVROU,LAW 813-258-1810-    TO:18886727347    P.1/2

Lebanese Forces Official Forum                           Page 1 of 2



☑ Currently Active Users' 534 (43 members and 491 guests)
☑ Threads: 25,990, Posts: 279,939, Members: 4,334
☑ Welcome to our newest member, ZaTiger

User Name [User Name] ☐ Remember Me?
Password [ ] [Log In]

**Welcome to the Lebanese Forces Official Forum.**

Welcome to the Lebanese Forces official forum.

You are currently viewing our boards as a guest which gives you limited access to view most discussions, articles and access our other FREE features. By joining our free community you will have access to post topics, communicate privately with other members (PM), respond to polls, upload your own photos and access many other special features. Registration is fast, simple and absolutely free so please, join the Lebanese Forces official forum today!

If you have any problems with the registration process or your account login, please contact us.

**Official**

| Forum | | Threads | Posts |
|---|---|---|---|
| **Suggestions, Announcements, Events, etc. (3 Viewing)** Anything you don't know... Anything you want us to change... Forum Announcements, LF Events, etc. **Sub-Forums:** 📁 Announcements, 📁 Events | | 579 | 3,052 |
| LFBA Annual dinner 27-03-08 - by ein remeneh | Today - 06:07 PM | | |
| **Classified (1 Viewing)** Moderated Forum for Classified ads by members of the forum | | 15 | 34 |
| Job opportunities in the... - by ein remeneh | 03-09-2008 - 08:46 AM | | |

**Main**

| Forum | | Threads | Posts |
|---|---|---|---|
| **Political Forum (97 Viewing)** Lebanon and Lebanese Forces related Political Discussions **Sub-Forums:** 📁 Forum Francophone, 📁 News & Articles | | 10,840 | 122,594 |
| Why doesn't tayyar report about... - by Kam05 | Today - 10:26 PM | | |
| **History, Religion & Philosophy (31 Viewing)** Science is what you know. Philosophy is what you don't know. | | 1,222 | 10,434 |
| ... - by LFCelina | Today - 10:13 PM | | |
| **Serious Non-Political Discussions (4 Viewing)** Serious discussions about non political issues, such as social, scientific and literary issues. | | 221 | 2,498 |
| American presidential elections - by El Ninnr Dany | Today - 09.09 PM | | |

**Lebanese Forces**

| Forum | | Threads | Posts |
|---|---|---|---|
| **LF Students (7 Viewing)** Discussions of Lebanese Forces Students Affairs, Activities, elections and events. | | 139 | 1,754 |
| Lebanese Universities Elections... - by georges.e.h | Today - 08:51 PM | | |
| **Martyrs and Personalities (4 Viewing)** The LF and Lebanese Resistance Martyrs and Personalities section. Biography, events and history. | | 233 | 1,726 |
| Chahid al yawom... - by Garfield | Today - 10:33 PM | | |
| **Video/Audio/Photos (13 Viewing)** Download the latest videos, sound clips and photos concerning the LF activities or any other national event! | | 1,462 | 8,280 |
| I need the logo for "7ayso la... - by ZaTiger | Today - 10:33 PM | | |

**EXHIBIT 3**

MAR-20-2008 16:18  FROM:M.PENA/A.STAVROU.LAW 813-258-1810-          TO:18886727347          P.2/2

Lebanese Forces Official Forum                                              Page 2 of 2



MAR-20-2008 16:20  FROM:M.PENA/A.STAVROU.LAW 813-258-1810-          TO:18886727347          P.1/2

BG Forum - Members List                                                    Page 1 of 2



President Bachir Gemayel Official Forum

BG Forum
Members List

| | | | | | | | | | User Name | User Nam |
| | | | | | | | | | Password | |

Register          FAQ          Members List          Calendar          Today's Posts

#   A   B   C   D   E   F   G   H   I   J   K   L   M   N   O   P   Q   R   S   T   U   v   W

Page 1 of 121  1  2  3  11  5

BG Forum: Members List

Showing results 1 to 30 of 3629
Search took 0.14 seconds

| User Name | Posts | Avatar |
|---|---|---|
| JY: 3 | | |
| Junior Member | 0 | |
| الله عليهم | | |
| Junior Member | 0 | |
| "Loubnanouna" | | |
| Junior Member | 0 |  |
| ¨¨¨¨¨¨¨¨ | | |
| Junior Member | 0 | |
| ***NASSAR*** | | |
| Junior Member | 0 | |
| · ?Lewis | | |
| Junior Member | 0 | |
| Ars | | |
| Junior Member | 0 | |
| XIII | | |
| Junior Member | 0 | |
| (P)- | | |
| Junior Member | 4 | |
| 10452Km2 | | |
| Junior Member | 2 |  |
| 00961info | | |
| Junior Member | 0 | |
| 10 452km2-na-nabka | | |
| Junior Member | 0 | |
| 10452 | | |
| Junior Member | 0 | |
| 10452km | | |
| Junior Member | 0 | |
| 10452km10452 | | |
| Junior Member | 0 | |
| 10452km2 | | |
| Junior Member | 0 | |
| 10452km2for bachir | | |
| Junior Member | 0 | |
| 10452km2lisedream | | |
| Junior Member | 0 | |
| 10452km4eva | | |
| Junior Member | 0 | |
| 10452km:BESS | | |
| Junior Member | 0 | |
| 10452km_bachir | | |
| Junior Member | 0 | |
| 10452lebaneseforces | | |
| Junior Member | 0 | |
| 10452-banvn | | |
| Junior Member | 0 | |
| 10452mer2a2all | | |
| Junior Member | 0 | |
| 10452_bachir | | |
| Junior Member | 0 | |

**EXHIBIT 4**

http://www.bachirgemayel.org/forum/memberlist.php                    3/19/2008

MAR-20-2008 16:21   FROM:M.PENA/A.STAVROU,LAW 813-258-1810-          TO:18886727347          P.2/2

BG Forum - Members List                                                           Page 2 of 2

| | |
|---|---|
| 10452 km2<br>Junior Member | 0 |
| 1146<br>Junior Member | 0 |
| 123freedom<br>Junior Member | 0 |
| 23 August 1982<br>Junior Member | 0 |
| 2bornot2b<br>Junior Member | 0 |

Showing re

Page 1 of 124  1  2  3  11  5

**Forum Jump**
User Control Panel

All times are GMT +3. The time now is 01 38 AM.

**Contact Us - Bachir Gemayel Communit**

Powered by vBulletin® Version 3.6.8
Copyright ©2000 - 2008, Jelsoft Enterprises Ltd.

OAO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### District of Columbia

Edward T. Saadi

V.

Pierre A. Maroun, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-CV-01976-SCB-MAP
(U.S. Dist. Ct. Middle Dist. Fla)

TO: AOL, LLC
Legal Department-Custodian of Records · Civil Subpoenas
22000 AOL Way → c/o Corporation Service Company
Dulles, VA 20166    11 South 12th Street, 5th Floor
                    Richmond, VA 23218

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See "Attachment A." The requested documents may be produced by delivering originals or copies thereof to the Plaintiff on or before the date indicated below at 970 Windham Ct, Ste 7, Boardman, Ohio 44512, 330-782-1954, 330-266-7489 (fax)

| PLACE  Starbuck's 1810 Wisconsin Avenue NW Washington, D.C. 20007 | DATE AND TIME  June 24, 2008 2:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  Kristin Brown, DEPUTY CLERK | DATE  3/6/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

KRISTIN BROWN, 333 CONSTITUTION AVE, N.W. Rm. 1225, WASHINGTON DC 20001
(202) 354-3164

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



**EXHIBIT**

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

### Definitions

As used herein, the following definitions shall apply:

A.    "DOCUMENT" means any matter within the scope of Fed. R. Civ. P. 34(a), including, but not limited to:  all paper material of any kind, whether written, typed, punched, filmed, or marked in any way; recording tape or wires; film, photographs, movies, or any graphic matter however produced or reproduced; all computerized, electronic, or magnetic records, information, notes, messages, or data compilations; and/or all mechanical or electronic sound recordings or transcripts thereof.

B.    "ISP" refers to America Online, Inc., AOL, LLC, and any of their affiliates, subsidiaries, employees, officers, or agents.

C.    "ISP SERVICE" refers to any internet-related service(s) provided by ISP to its customers.

D.    "EMAIL ADDRESS" refers to the email address nelhindi@aol.com.

E.    "DEFENDANTS" refers to any and all persons who registered for, used, or accessed the internet using the ISP SERVICE from the following Internet Protocol ("IP") addresses on the given date and approximate time:

| IP Address | Machine Name | Date | Time (Eastern) |
|---|---|---|---|
| 205.188.117.144 | cache-dtc-ag16.proxy.aol.com | 8/9/2007 | 19:42:31 |
| 64.12.117.144 | cache-mtc-ag16.proxy.aol.com | 8/8/2007 | 19:21:16 |
| 64.12.117.78 | cache-mtc-af14.proxy.aol.com | 8/8/2007 | 19:17:24 |

F.    "RELATING TO" means:  relating to, referring to, pertaining to, indicating, demonstrating, evidencing, containing, describing, embodying, mentioning, constituting, corroborating, proving, refuting, disputing, rebutting, controverting, or contradicting.

### Documents Requested

ISP shall produce the following DOCUMENTS:

1.    All DOCUMENTS RELATING TO the identity of DEFENDANTS, including but not limited to the following:

    a.    Name, residential and/or business address, and residential and/or telephone number;

    b.    All e-mail addresses of DEFENDANTS;

1

    c. All usernames and/or aliases of DEFENDANTS used in connection with the ISP SERVICE;

  2. All DOCUMENTS RELATING TO the identity of the person(s) associated with the EMAIL ADDRESS, including but not limited to the following:

    a. Name, residential and/or business address, and residential and/or telephone number;

    b. All other e-mail addresses of such person(s);

    c. All other usernames and/or aliases of such person(s) used in connection with the ISP SERVICE;

  3. All DOCUMENTS RELATING TO the registration for, creation of, access to, or use of the ISP SERVICE by the DEFENDANTS, including but not limited to any and all registration information and/or credit card or other payment information submitted by DEFENDANTS in connection with same.

  4. All DOCUMENTS RELATING TO the registration for, creation of, access to, or use of the ISP SERVICE by the person(s) identified in Paragraph 2, including but not limited to any and all registration information and/or credit card or other payment information submitted by such person(s) in connection with same.

  5. All DOCUMENTS RELATING TO any formal or informal policy relating to the preservation by ISP of the information requested in Paragraphs 1 through 4 above.

2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

EDWARD T. SAADI

    Plaintiff

    v.

PIERRE A. MAROUN, ET AL.

    Defendant

Case No. 07-CV-01976-SCB-MAP

## AFFIDAVIT OF PROCESS SERVER

Appeared before me this __12th__ day of __June 2008__, James A. Blankenship, a process server, and stated as follows.

1. I am a private process server retained to serve process in regards to the above captioned matter.

2. I am over the age of eighteen years and am of sound mind and body.

3. I have no interest in the outcome of this suit, either personal, financial, or otherwise.

4. On June 09, 2008, I appeared at the office of Corporation Service Company located at 11 South 12th Street, 5th Floor, Richmond, VA and served a true copy of the following:

*Subpoena in a Civil Case, Second Amended Complaint for Injunctive Relief and Demand for Jury Trial*

on Rene Nordquist, who presented written authorization indicating that she is authorized to accept service for Corporation Service Company. Service was effected on said date at approximately 03:58 PM.

Priority Legal Services: 1 of 2 Pages

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SPX CORP.,                        )   CASE NO. 1:02CV919
                                  )
        Plaintiff,                )
                                  )
vs.                               )   Judge John M. Manos
                                  )
JOHN DOE,                         )
                                  )
        Defendant.                )   MEMORANDUM OF OPINION

On May 21, 2002, John Doe, defendant, filed a Motion To Quash a subpoena issued against

non-party Yahoo!, Inc. (Docket No. 7). The Court reserves ruling on the motion for the reasons set

forth below.

## I. FACTS

On May 15, 2002, the Defendant removed this action from the Court of Common Pleas of

Cuyahoga County, Ohio. In its Complaint, SPX Corp., plaintiff, alleges that the Defendant made

defamatory comments regarding the Plaintiff's business and stock value. The Defendant denies

that the alleged statements meet the legal definition of defamation.

The statements were made on an Internet message board maintained by Yahoo!, an Internet

service provider. Generally, an Internet message board is an electronic forum through which

anyone with Internet access can post messages about a given topic. Then, anyone with Internet



access can read them, and even respond if desired. Yahoo! maintains numerous message boards, including some in which the discussion topic is a particular publicly traded company. In fact, according to the parties, Yahoo! maintains a separate message board devoted to each and every publicly traded company. One such message board pertains to the Plaintiff. Although Yahoo! provides the forum, it does not control the content of the messages. In addition, the Plaintiff has no affiliation with the message board.

The statements at issue were posted on the SPX message board in two separate postings, both occurring on February 22, 2002. As is common in sending messages over the Internet, the Defendant did not use his real name. Rather, he used the screen name "neutronb".[1] From the postings, it is impossible to determine the true identity of neutronb. Yahoo!, however, maintains identifying information about its users, including their real names, addresses, and telephone numbers.

On May 1, 2002, this action was filed in state court against "John Doe", but the Complaint could not be served because the Plaintiff did not know the identity of neutronb. On May 6, 2002, the Plaintiff initiated a subpoena against Yahoo! essentially seeking all documents that refer or relate to the user going by the screen name neutronb. Such documents would contain personal information revealing the Defendant's identity.

On May 7, 2002, Yahoo! refused to turn over the information citing a federal criminal statute that generally prohibits disclosure of personal information by an Internet service provider, except under limited circumstances. See 18 U.S.C. § 2702. Yahoo! indicated, however, that it would turn over the information requested if "neutronb" did not object to the subpoena. Yahoo!

---

[1]    For convenience, the Court refers to the Defendant using male pronouns. Neutronb might be female.

-2-

forwarded the complaint and the subpoena to the Defendant, who hired counsel. Counsel removed

the action on diversity grounds and has waived service of the Complaint on behalf of their client.

Although the Defendant has appeared through his counsel, the Court has not yet required him to

disclose his identity.

On May 22, 2002, the Defendant filed the current Motion To Quash. As a result of his

objection to the subpoena, Yahoo! has not turned over the information relating to his Internet

account.

On June 14, 2002, the Court held a status conference. The Defendant's position essentially

is that the statements at issue do not meet the legal definition of defamation. Accordingly, his

counsel indicated a desire to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Counsel urged the Court at least to entertain a motion to dismiss before requiring disclosure of

their client's identity. The Plaintiff disagrees and argues that it is entitled to commence discovery,

including discovery that necessarily would reveal the Defendant's identity. The Court attempted to

negotiate an agreed manner by which the Defendant could be deposed with limitations on

disclosing his identity.   Such an agreement would obviate the need to rule on the propriety of the

subpoena against Yahoo!. The parties, however, ultimately were unable to agree.

## II. LAW AND ANALYSIS

The Defendant argues that the subpoena should be quashed pursuant to the First Amendment

right to speak anonymously.   See, e.g., Buckley v. American Constitutional Law Foundation, 525

U.S. 182, 199-200 (1999);  McIntyre v. Ohio Elections Commission, 514 U.S. 334, 341-43

(1995). This right extends to anonymous speech over the Internet. Reno v. American Civil

Liberties Union, 521 U.S. 844, 871 (1997) (speech over the Internet is entitled to the same

protection as speech in other forums); American Civil Liberties Union v. Johnson, 4 F. Supp. 2d

-3-

1029, 1033 (D.N.M. 1998), aff'd, 194 F.3d 1149 (10th Cir. 1999); American Civil Liberties

Union v. Miller, 977 F. Supp. 1228, 1230, 1232 (N.D. Ga. 1997).

The Plaintiff argues that the First Amendment does not protect the Defendant if the

statements are defamatory. This is correct. The parties dispute, however, whether the allegations

in the Complaint meet the basic pleading requirements for a defamation claim pursuant to Rule

12(b)(6). The Defendant is concerned that First Amendment rights will be diminished if an

anonymous speaker can be forced to disclose his or her identity solely upon the filing of a

Complaint. If disclosure could be achieved so readily, then the mere filing of a lawsuit can be

used as a means to intimidate or dissuade people from making negative comments about publicly

traded companies.

Cases addressing this precise issue are few. In such cases, courts have attempted to

balance the First Amendment right to speak anonymously with the rights of a litigant to obtain

relevant discovery and prove its claims or defenses. In Columbia Insurance Co. v.

Seescandy.com, 185 F.R.D. 573, 579 (N.D. Cal. 1999), the court required the plaintiff to

demonstrate that the claims against anonymous parties could withstand a motion to dismiss. The

court indicated that conclusory pleadings are insufficient. Id. In Doe v. 2TheMart.com, 140 F.

Supp. 2d 1088 (W.D. Wash. 2001), the Court applied a similar analysis in determining whether to

order discovery against *non-party* anonymous Internet users. Applying Columbia Insurance, the

court held that the standards for ordering discovery against anonymous *non-parties* must be stricter

than if the discovery is sought from a party. Id. at 1095. In America Online, Inc. v. Anonymous

Publicly Traded Company, 542 S.E.2d 377, 385 (Va. 2001), the court held that a party wishing to

remain anonymous must show "special circumstances" demonstrating that the party's First

Amendment interest in remaining anonymous outweighs any potential prejudice to opposing parties

-4-

and the societal interest in public trials. All these cases represent attempts to balance the various competing interests.

Here, the Defendant's position is that the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6). At the status conference, Defendant's counsel expressed their intent to file such a motion. A determination of dismissal under Rule 12(b)(6) is based solely on the pleadings without any discovery. Therefore, if the Defendant is correct, then the case can be dismissed without disclosing his identity, thereby protecting his First Amendment right to remain anonymous. If he is incorrect, then the Court can order discovery identifying him upon denial of the motion to dismiss. Accordingly, the Court concludes that the parties' interests are best balanced by entertaining a motion to dismiss prior to engaging in discovery.

### III. CONCLUSION

For the foregoing reasons, the Court reserves ruling on the Defendant's Motion To Quash (Docket No. 7). The Defendant has ten (10) days within which to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the Plaintiff has ten (10) days thereafter to respond. Discovery shall be stayed until after the Court rules on the motion to dismiss.

IT IS SO ORDERED.

Issued: July 1, 2002                         s/ John M. Manos
                                             UNITED STATES DISTRICT JUDGE

-5-

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

In Re:                                     )
SUBPOENA TO AOL, LLC                       )
                                           )
                                           )    MISCELLANEOUS
                                           )    CASE NO. _____
                                           )
                                           )    (RE: CASE NO . 07-CV-01976-SCB-MAP
                                           )    *In the Middle District of Florida)*
                                          . )

JOHN DOE'S MOTION TO QUASH


### ORDER

Upon consideration of Petitioner John Does' June 27, 2008 Motion to Quash

subpoena issued by Edward Saadi to AOL, LLC, and any  opposition thereto, it be and

hereby is this _____ day of _____, 2008,

ORDERED, that the Motion to Quash is GRANTED.


_____
United States District Judge